**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 13 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

RT COMMUNICATIONS, INC.;
UNION TELEPHONE COMPANY,

      Petitioners,

vs.

FEDERAL COMMUNICATIONS
COMMISSION; UNITED STATES
OF AMERICA,

      Respondents.

_____

SILVER STAR TELEPHONE CO.,
INC.,

      Intervenor.

Nos. 98-9541
98-9542

## ON PETITIONS FOR REVIEW FROM ORDERS OF
## THE FEDERAL COMMUNICATIONS COMMISSION
## (CCB Pol. 97-1; FCC 97-336 & FCC 98-205)

Bruce S. Asay, Associated Legal Group, LLC, Cheyenne Wyoming, for
Petitioners RT Communications, Inc. and Union Telephone Co. (Gay V.
Woodhouse, Attorney General, Michael L. Hubbard, Kristin H. Lee, Stephen G.
Oxley, Office of the Attorney General, Cheyenne, Wyoming, for Petitioner
Wyoming Public Service Commission, with him on the brief).

James M. Carr, Counsel, (and Christopher J. Wright, General Counsel, and John
E. Ingle, Deputy Associate General Counsel, Federal Communications
Commission, Washington, D.C., and Joel I. Klein, Assistant Attorney General,

Catherine G. O'Sullivan and Nancy C. Garrison, Attorneys, United States Department of Justice, Washington, D.C., with him on the brief), for Respondents.

John D. Seiver and John C. Dodge of Cole, Raywid & Braverman, LLP, Washington, D.C., for Intervenor.

---

Before **KELLY**, **HOLLOWAY**, and **BRISCOE**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

This case involves an appeal from orders of the Federal Communications Commission (FCC) preempting a section of Wyoming telecommunications law. We have jurisdiction under 47 U.S.C. § 402(a) and 28 U.S.C. § 2342(1) and uphold the FCC orders.

Background

In 1993, the Wyoming Public Service Commission (PSC) conducted an extensive review of the state's telecommunications infrastructure. It concluded that modern basic telecommunications service was not being adequately provided in many rural areas of the state and ordered extensive improvements. U.S. West, the primary telecommunications provider in Wyoming, decided to sell off certain local exchanges to independent providers rather than incur the expense of upgrading the existing infrastructure. It entered into an agreement to sell the

- 2 -

Afton, Wyoming Exchange to Union Telephone Company (Union) and the Wyoming PSC subsequently granted Union a certificate of public convenience and necessity (CPCN) to serve the Afton Exchange. [1]

Based partly on the findings of the PSC, the state enacted the Wyoming Telecommunications Act of 1995, designed to provide a smooth transition from monopolistic industry to a competitive market. In order to induce the development of telecommunications infrastructure in rural areas, the Act provided small incumbent telephone companies with a ten year period of protection from competition until each had "substantially recover[ed] its investment for upgraded services" in that particular area. Wyo. Stat. Ann. § 37-15-201(c), (d). A competing company could only receive a concurrent CPCN in one of these exchanges if they were able to provide adequate service and the incumbent LEC: (1) consented; (2) was unwilling or unable to provide adequate service; (3) failed to protest the concurrent application; (4) had applied for or was providing concurrent service in another exchange; or (5) was providing cable radio or video services. Wyo. Stat. Ann. § 37-15-201(c).

In February 1996, Silver Star Telephone Company applied for a concurrent

---

[1]Wyoming law requires that providers of local phone service – also known as "local exchange carriers" (LECs) – obtain a CPCN from the Wyoming PSC for each exchange before providing service in that area. Wyo. Stat. Ann. § 37-15-201(a). A LEC may not provide service in areas for which it is not authorized in its CPCN.

CPCN to provide competing local phone service in the Afton Exchange. Union protested this application. In a December 1996 decision, the Wyoming PSC determined that Union was the incumbent LEC of the Afton Exchange (even though the sale from U.S. West had not been completed) and denied Silver Star's application pursuant to Wyo. Stat. § 37-15-201(c).

Silver Star petitioned the Federal Communications Commission (FCC) to preempt the PSC's decision and the Wyoming statute as conflicting with the Telecommunications Act of 1996, specifically 47 U.S.C. § 253. In a September 24, 1997 order (hereinafter "Order"), the FCC granted the petition, finding that the Wyoming statute was not "competitively neutral" as required by § 253(b). See Addendum to Pet. Br.; 12 F.C.C.R. 15639.

A month later, the PSC filed a petition asking the FCC to reconsider its preemption of the statute. Before the FCC could rule on this petition, however, the proposed sale of the Afton Exchange from U.S. West to Union fell through. The Wyoming PSC determined that U.S. West did not qualify for the protection of § 37-15-201(c) and granted Silver Star a concurrent CPCN. Since Silver Star's requests had been met, the PSC argued that the issue was moot and the FCC should withdraw its order and refuse to further address the claim. The FCC disagreed and upheld the preemption of the Wyoming statute in an August 24, 1998 order (hereinafter "Reconsideration Order"). See Addendum to Pet. Br.; 13

- 4 -

F.C.C.R. 16356.  This appeal followed.


## Discussion

A.    Mootness

Petitioners argue that the FCC petition became moot when the Wyoming PSC granted Silver Star a concurrent CPCN and, therefore, the FCC should have dismissed the issue.  However, this argument confuses the jurisdictional requirements of the FCC with those of an Article III court.  "[A]n administrative agency is not bound by the constitutional requirement of a 'case or controversy' that limits the authority of article III courts to rule on moot issues."  Climax Molybdenum Co. v. Secretary of Labor , 703 F.2d 447, 451 (10th Cir. 1983).    See also Metropolitan Council of NAACP Branches v. FCC  , 46 F.3d 1154, 1161 (D.C. Cir. 1995) (noting that 'case or controversy' rules of Article III do not apply to administrative agencies).  Rather, an agency has "substantial discretion" to decide whether to hear issues which might be precluded by mootness.    See Climax , 703 F.2d at 451.  In exercising this discretion, the agency should be guided by two factors: (1) whether resolution of the issue is the proper role of the agency as an adjudicatory body; and (2) whether concerns for judicial economy weigh in favor of present resolution.    Id.

In this case, the FCC clearly meets both factors.  First, 47 U.S.C. § 253(d)

specifically designates preemption as a proper action of the FCC when dealing with state statutes which conflict with § 253(a) or (b). Secondly, the FCC noted that the Wyoming PSC's decision to grant Silver Star a concurrent CPCN was based upon changed factual circumstances and not upon a finding that the Wyoming statute was invalid. The FCC determined that its first order was necessary because otherwise "the Wyoming Commission would continue to follow [§ 37-15-201(c)] and deny any future concurrent CPCN application to which an eligible incumbent LEC duly objected." Reconsideration Order at 13. The FCC's decision to preempt the Wyoming statute was an act of the proper government agency based upon principles of judicial economy. We cannot say that this decision was an abuse of discretion.

B.     Competitively Neutral

47 U.S.C. § 253(a) provides: "No State or local statute or regulation . . . may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." The Wyoming statute clearly has the effect of prohibiting telecommunications companies from obtaining a concurrent CPCN to provide intrastate phone service. However, petitioners argue that the Wyoming statute is saved by § 253(b).

> Nothing in this section shall affect the ability to impose,
> on a competitively neutral basis and consistent with
> section 254 of this section, requirements necessary to
> preserve and advance universal service, protect the

public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.

47 U.S.C. § 253(b).  The FCC found that the Wyoming statute could not be saved under this provision because it was not competitively neutral.  Petitioners disagree and argue that the Wyoming statute is competitively neutral because it treats all  new telecommunication entrants the same.

In reviewing a final FCC order interpreting the Telecommunications Act, we utilize the two-step approach announced in      Chevron USA Inc. v. Natural Resources Defense Council   , 467 U.S. 837 (1984).    See U.S. West v. FCC  , 182 F.3d 1224, 1231 (10th Cir. 1999).  If the statute speaks clearly to the precise question at issue, we must give effect to the express intent of Congress.        See Chevron , 467 U.S. at 842-43.  When the statute is silent or ambiguous, however, deference is due to the agency's interpretation, so long as it is reasonable and not otherwise arbitrary, capricious or contrary to the statute.        See id. at 843-44. Since the FCC's order in this case involved the interpretation of the ambiguous phrase "competitively neutral," we review with deference.       [2]

In its Reconsideration Order, the FCC noted that the "Wyoming legal

_____

[2]The phrase "competitively neutral" is used in only three sections of the United States Code, and all three of those references were added by the Telecommunications Act of 1996.  See 47 U.S.C. §§ 251, 253, 254.  Nowhere is the phrase defined.

requirements are not 'competitively neutral' within the meaning of § 253(b), because they award certain incumbent LECs the ultimate competitive advantage – preservation of monopoly status – and simultaneously saddle potential new entrants with the ultimate competitive disadvantage – an insurmountable barrier to entry." Reconsideration Order at 3. The FCC specifically rejected the claim that a statute was neutral if it treated all new carriers the same. "Neither the language of section 253(b) nor its legislative history suggests that the requirement of competitive neutrality applies only to one portion of a local exchange market – new entrants – and not to the market as a whole, including the incumbent LEC." Id. at 6.

Petitioners argue that the Wyoming statute is not an "insurmountable" or "absolute" barrier to competition, and therefore, it must be competitively neutral. The problem with this argument is that it simply does not speak to the question of competitive neutrality. First, the FCC's view that this is an absolute bar to prospective LECs is correct. "[A] potential new entrant cannot do anything to avoid or hurdle the rural incumbent protection provision's bar. The incumbent LEC, instead, has essentially unfettered discretion to determine whether the rural incumbent protection provision will operate to preclude competitive entry in its territory." FCC Reconsideration Order at 5.

Second, even assuming Petitioners' argument to be true, the extent to

which the statute is a "complete" bar is irrelevant. § 253(a) forbids any statute which prohibits or has "the effect of prohibiting" entry. Nowhere does the statute require that a bar to entry be insurmountable before the FCC must preempt it.

Support for the FCC's definition of "competitively neutral" can be drawn from recent cases discussing the term as used in other sections of the Telecommunications Act. In U.S. West v. MFS Intelenet, Inc., 193 F.3d 1112 (9th Cir. 1999), the Ninth Circuit noted that "[t]he FCC has ruled that a mechanism assigning costs based on each exchange carrier's active local numbers is 'competitively neutral' [under § 251(e)(2)] but a mechanism requiring new entrants to bear all the costs of number portability is not." Id. at 1120. The court then prohibited a collateral attack on this order since plaintiffs had not sought a determination of validity directly with the court of appeals.

In Cablevision of Boston, Inc. v. Public Improvement Comm'n, 184 F.3d 88 (1st Cir. 1999), a carrier challenged city policy regarding the use of underground cable and circuit conduits. In examining the "competitively neutral" requirements of § 253(c), the court held:

> that the term "competitively neutral in § 253(c) imposes
> – at most – a negative restriction on local authorities'
> choices regarding the management of their rights of
> way. This means that the statute would not require local
> authorities to purposefully seek out opportunities to
> level the telecommunications playing field. If, however,

> a local authority decides to regulate for its own reasons . . ., § 253(c) would require that it do so in a way that avoids creating unnecessary competitive inequities among telecommunications providers.

Id. at 105. The court assumed that the city's oral policy which resulted in "equivalent notice obligations for all market participants" satisfied the competitively neutral requirement. Id. at 103 (emphasis added).

Petitioners spend the majority of their briefs arguing that the Wyoming statute should not be preempted because it accords with the universal service policy of the federal Telecommunications Act. However, it is a well established rule of statutory construction that general policy does not trump specific legislative provisions. While we empathize with Wyoming's desire to achieve statewide modern telecommunications service, § 253 governs this case and requires preemption.

Petitioners further argue (1) that preemption is only possible when Congress has passed legislation occupying an entire field of regulation; (2) the FCC failed to give proper notice of the proceedings; and (3) the FCC exceeded its authority by preempting more than was "necessary" to enforce § 253. These arguments are meritless.

First, "[p]re-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law . . . ." Louisiana Pub. Serv. Comm.

v. FCC, 476 U.S. 355, 368 (1986). § 253 is a clear example of this. See 47 U.S.C. § 253(d) ("the Commission *shall preempt* the enforcement of such statute) (emphasis added). Second, the FCC gave proper notice of its contemplated action in two Public Notices, which specifically stated that the FCC was contemplating preempting both the Wyoming PSC's Denial Order and "certain provisions of the Wyoming Telecommunications Act of 1995 (*i.e.*, Wyo. Stat. Ann. §§ 37-15-201(c)-(f))." R. at tab. 17, 37. Third, the FCC order was "necessary" within the meaning of § 253(d) to afford new LECs a competitive opportunity in the telecommunications market. Petitioners have not asserted, nor are we aware of, any alternative besides complete preemption which would have guaranteed across the board competitive neutrality.

The FCC's Orders preempting the Wyoming statute were based on a reasonable interpretation of § 253(b) and are not otherwise unconstitutional.

AFFIRMED.