Public Utilities Commission
No. 2008-645

APPEAL OF VERIZON NEW ENGLAND, INC. d/b/a VERIZON
NEW HAMPSHIRE *& a.*
(New Hampshire Public Utilities Commission)

Argued: April 7, 2009
Opinion Issued: May 7, 2009

694

*Orr & Reno, P.A.*, of Concord (*Susan S. Geiger* on the joint brief and orally), for the petitioner, Freedom Ring Communications, LLC d/b/a BayRing Communications, and intervenor One Communications.

*Hinckley, Allen & Snyder, LLP*, of Concord (*Daniel M. Deschenes* on the joint brief), and *Jay E. Gruber*, of Boston, Massachusetts, on the joint brief and orally, for intervenor AT&T Corporation.

*Munger, Tolles & Olson, LLP*, of Los Angeles, California (*Henry Weissmann* on the joint brief and orally), and *McLane, Graf, Raulerson & Middleton, P.A.*, of Portsmouth (*Sarah B. Knowlton* on the joint brief), and *Alexander W. Moore*, of Boston, Massachusetts, on the joint brief, for respondent Verizon New England, Inc. d/b/a Verizon New Hampshire.

*Devine, Millimet & Branch, P.A.*, of Concord (*Frederick J. Coolbroth & a.* on the joint brief), for respondent Northern New England Telephone Operations LLC d/b/a FairPoint Communications - NNE.

DALIANIS, J. The respondents, Verizon New England, Inc. d/b/a Verizon New Hampshire (Verizon) and Northern New England Telephone Operations d/b/a FairPoint Communications - NNE (FairPoint), appeal a decision of the New Hampshire Public Utilities Commission (PUC) mandating that they cease billing other carriers for certain charges. We reverse.

At issue is the PUC's interpretation of NHPUC Tariff No. 85, *available at http://www.puc.nh.gov/Regulatory/Tariffs/FairPointNo85AccessTariff.pdf*. Tariff No. 85 is one of several tariffs that apply to the services that were formerly offered by Verizon and are now offered by FairPoint. For ease of reference, this opinion will refer to Verizon and FairPoint, collectively, as Verizon.

The dispute in this case is about a charge that Verizon has required petitioner Freedom Ring Communications, LLC d/b/a BayRing Communications (BayRing), intervenor One Communications, and intervenor

AT&T Corporation (collectively, the petitioners), to pay. The petitioners are competitor telephone companies that use Verizon's network to provide telephone services in New Hampshire. *See* Tariff No. 85, *supra* section 2.1.1.

The charge at issue is called the "carrier common line access charge." *See* Tariff No. 85, *supra* section 5. In 2006, BayRing petitioned the PUC to investigate Verizon's imposition of this charge upon certain local or "intrastate" toll calls. Following a hearing, the PUC ruled in the petitioners' favor, and this appeal followed.

We first discuss the proper standard of review in this case. A party seeking to set aside an order of the PUC has the burden of demonstrating that the order is contrary to law or, by a clear preponderance of the evidence, that the order is unjust or unreasonable. RSA 541:13 (2007); *see Appeal of Verizon New England*, 153 N.H. 50, 56 (2005). Findings of fact by the PUC are presumed *prima facie* lawful and reasonable. RSA 541:13; *see Verizon*, 153 N.H. at 56.

We review certain PUC orders deferentially. "When . . . we are reviewing agency orders which seek to balance competing economic interests, or which anticipate such an administrative resolution, our responsibility is not to supplant the [PUC's] balance of interests with one more nearly to our liking." *Appeal of Conservation Law Foundation*, 127 N.H. 606, 616 (1986) (quotation, ellipses and brackets omitted). While we give the PUC's policy choices considerable deference, *see Verizon*, 153 N.H. at 56, we do not defer to its tariff interpretation, despite its obvious expertise in this regard. *Cf. Appeal of State of N.H.*, 138 N.H. 716, 719-20 (1994) (explaining that court no longer defers to statutory interpretation by New Hampshire Public Employee Labor Relations Board).

"[T]he vehicles by which utility rates are set, the tariffs or rate schedules required to be filed with the PUC, do not simply define the terms of the contractual relationship between a utility and its customers." *Appeal of Pennichuck Water Works*, 120 N.H. 562, 566 (1980) (citations omitted). "They have the force and effect of law and bind both the utility and its customers." *Id.* Because a tariff has the same force and effect as a statute, we interpret a tariff in the same manner that we interpret a statute. *See Laclede Gas Co. v. Public Service Com'n*, 156 S.W.3d 513, 521 (Mo. Ct. App. 2005). Therefore, we review the PUC's tariff interpretation *de novo. See Nenni v. Comm'r, N.H. Ins. Dep't*, 156 N.H. 578, 581 (2007). We begin by examining the language used in the tariff, ascribing the plain and ordinary meaning to the words used. *See id.* Where the tariff's language is plain and unambiguous, we will not look beyond it to determine its intent. *See id.; Laclede Gas Co.*, 156 S.W.3d at 521.

Before addressing the merits of this appeal, we explain the process by which a telephone call is made. In PUC parlance, the individuals at either end of a telephone conversation are "end users." *See* Tariff No. 85, *supra* section 1.3.2. When an "end user" makes a telephone call, the call is transmitted to an "end office" over a set of wires or fiber optic lines that is called a "common line." *See* Tariff No. 85, *supra* section 1.3.2. In the calls at issue, neither person on either end of the conversation was a Verizon customer. Thus, because the "end user" making the telephone call was not a Verizon customer, the "end office" to which the call was transmitted, as well as the "common line" leading to the "end office," did not belong to Verizon.

Once a call has been transmitted to the "end office," the "end office" routes it over another set of wires or fiber optic lines, depending upon whether the call is a local or toll call. In the calls at issue, the "end office" connected the calls to a Verizon "access tandem." An "access tandem" is a type of switch. *See* Tariff No. 85, *supra* section 1.3.2. Switching is another word for connecting a call. *See* C.H. KENNEDY, AN INTRODUCTION TO U.S. TELECOMMUNICATIONS LAW 2 (2d ed. 2001). In the calls at issue, once a call was transmitted to Verizon's "access tandem," the "access tandem" then routed it either to another "end office" or to a "wire center," depending upon whether the call was a wireless call or not. In the calls at issue, the "end office" or "wire center" to which Verizon's "access tandem" routed the calls belonged to a non-Verizon telephone company. The "end office" or "wire center" then transmitted the calls to the "end user," who received the call.

In the context of this case, "local switching" refers to the process by which the "end office" routed the calls to Verizon's "access tandem," and "local transport" refers to the process by which Verizon's "access tandem" routed the calls to the non-Verizon telephone company's "end office" or "wire center." "Local switching" and "local transport" are two of three components of "switched access service." The third component is "common line access." *See* Tariff No. 85, *supra* section 6.1.2.D.

The parties dispute whether Tariff No. 85 allows Verizon to impose a carrier common line access charge for calls that do not traverse Verizon's common line. The petitioners contend that Verizon may impose the carrier common line access charge only for calls that are transmitted over Verizon's common line. As the calls at issue were not transmitted over Verizon's common line, the petitioners assert that it was error for Verizon to impose the carrier common line access charge upon these calls. Verizon counters that it was allowed to impose the carrier common line access charge for calls that did not traverse its common line because, under the tariff, this charge applies to each aspect of "switched access service" that Verizon

provided and it is undisputed that Verizon provided "local switching" and "local transport," two of the three aspects of "switched access service" in connection with the calls at issue.

To determine whether Verizon may impose the carrier common line access charge for calls that do not actually use Verizon's common line, we first examine the plain language of Tariff No. 85. Three provisions in section 5 of Tariff No. 85 specifically refer to the carrier common line access charge:

> • Section 5: "Carrier common line access service is billed to *each* switched access service provided under this tariff in accordance with the regulations set forth herein and in Section 4. 1, and at the rates and charges contained in Section 30.5."
>
> • Section 5.4.1.A: "Except as set forth herein, *all* switched access service provided to the customer will be subject to carrier common line access charges."
>
> • Section 5.4.1.C: "The switched access service provided by [Verizon] includes the switched access service provided for both interstate and intrastate communications. The carrier common line access rates and charges will be billed to *each* switched access service provided under this tariff in accordance with Section 4.1 and Section 5.4.2."

Tariff No. 85, *supra* sections 5, 5.4.1.A, 5.4.1.C (emphases added).

■ The plain meaning of these three provisions is that the carrier common line access charge applies to *each* aspect of switched access service that Verizon provides. The plain meaning of the word "each" is "each one" or "all considered one by one." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 713 (unabridged ed. 2002). Here, it is undisputed that Verizon provided local switching and local transport with respect to the calls at issue, and that local switching and local transport are part of switched access service. Accordingly, under the plain language of Tariff No. 85, it was permissible for Verizon to assess the carrier common line access charge to the local switching and local transport services it provided in connection with the calls at issue. Because we find the tariff's language to be plain and unambiguous, we will not look beyond it to determine its intent. *See Nenni*, 156 N.H. at 581.

■ The PUC reached the opposite conclusion in part because it conflated "switched access service" with "complete switched access service." These terms are not synonymous. Section 6.1.2.B identifies the three rate categories that apply to switched access service as "[l]ocal transport," "[l]ocal switching," and "[c]arrier common line." Tariff No. 85, *supra* section

6.1.2.B. Section 6.1.2.D explains: "Local transport, local switching and carrier common line *when combined* . . . provide a complete switched access service." Tariff No. 85, *supra* section 6.1.2.D (emphasis added). Thus, it is only when all three aspects of switched access service are provided that Verizon provides "complete switched access service." When only two aspects are provided, the "switched access service" is not complete, but is still "switched access service" under the tariff.

Although it is not binding upon us, we observe that the Federal Communications Commission (FCC) reached a similar conclusion in *AT & T Corp. v. Bell Atlantic - Pennsylvania*, 14 F.C.C.R. 556 (1998). At issue was the complaint by rival telephone companies that the incumbent telephone companies improperly assessed "access carrier common line (CCL) charges" for portions of interstate calls that did not actually use a common line. *AT & T Corp.*, 14 F.C.C.R. at 557, 558. The FCC ruled that imposing a CCL charge for a call that does not physically use a common line violated the FCC's own rules and prior orders, *see id.* at 570-75, but did *not* violate the clear language of the incumbent telephone companies' tariffs, *id.* at 592-93.

The tariffs of the incumbent telephone companies included language that was similar to the language in Tariff No. 85. *Id.* at 592-93. For instance, the tariff of one company provided: "[E]xcept as otherwise provided, all Switched Access Service provided to the customer will be subject to Carrier Common Line Access Service charges." *Id.* at 592 (quotation omitted). This language is nearly identical to section 5.4.1.A of Tariff No. 85. *See* Tariff No. 85, *supra* section 5.4.1.A.

The FCC determined that the tariffs appeared to be inconsistent with its interpretation of its rules and orders because "they imply that all switched access minutes that are not explicitly excepted from the CCL charge must be subject to that charge notwithstanding the absence of common line use." *AT & T Corporation*, 14 F.C.C.R. at 593. Accordingly, the FCC directed the incumbent telephone companies to modify their tariffs to reflect its finding that to impose a CCL charge upon a call that does not actually use a common line is contrary to its rules and prior orders. *Id.* Similarly, here, Tariff No. 85 implies that all switched access minutes must be subject to the carrier common line access charge even when Verizon's common line is not actually used.

We find guidance as well from the decision of the New York Public Service Commission (NYPSC) in *WilTel Communications, Inc. v. Verizon New York Inc.*, Case 04-C-1548, 2006 WL 1479507 (N.Y.P.S.C. May 30, 2006). In that proceeding, WilTel Communications, Inc. (WilTel) had complained that Verizon improperly charged the carrier common line access charges for intrastate calls that WilTel originated and that termi-

nated at a wireless carrier's network. WilTel argued, among other things, that Verizon was precluded from demanding compensation for carrier common line access when Verizon did not actually perform this service. The NYPSC ruled that the tariff language was clear and unambiguous and that nothing in that language "assume[d] that Verizon performs all of the stated functions" involved in providing complete switched access service. The Verizon tariff in the NYPSC proceeding stated, in pertinent part, "For traffic which originates or terminates at [a wireless carrier's network], Carrier Common Line [Access] Service and Switched Access Service Local Switching rates and charges . . . will apply."

While the tariff language at issue in the WilTel proceeding differed significantly from the language of Tariff No. 85, we reach a similar conclusion here. As with the Verizon tariff in the WilTel proceeding, there is nothing in Tariff No. 85 that requires Verizon to provide complete switched access service in order to charge the carrier common line access charge.

In arguing for a contrary result, the petitioners rely upon section 5.1.1.A.1, which states: "[Verizon] will provide carrier common line access service to customers in conjunction with switched access service provided in Section 6." Tariff No. 85, *supra* section 5.1.1.A.1. The petitioners contend that, pursuant to this provision, Verizon provides "switched access service" *only* when it also provides "carrier common line access service." In the calls at issue, because Verizon's common line was not used, Verizon did not provide "carrier common line access service," and, therefore, did not provide "switched access service." Accordingly, the petitioners contend, Verizon could not charge the carrier common line access charge for the disputed calls.

The plain meaning of section 5.1.1.A.1 does not support this interpretation. Read in the context of the entire tariff, section 5.1.1.A.1 merely reiterates that carrier common line access service is one of the types of switched access service that Verizon provides.

■ The petitioners also rely upon section 4.1.1.A, which requires Verizon to bill only for services it established, discontinued or provided during a given billing period. *See* Tariff No. 85, *supra* section 4.1.1.A. As Verizon provided local transport and local switching services in connection with the calls at issue, and as these two services are part of switched access service and, therefore, subject to the carrier common line access charge, we conclude that Verizon did not violate section 4.1.1.A when it imposed this charge upon the disputed calls.

Alternatively, the petitioners assert that section 5 of Tariff No. 85 simply does not apply to the disputed calls. The petitioners argue that "when

carriers are taking *only* Local Transport and Local Switching pursuant to Section 6 — as is the case here — the rates, terms and conditions of Section 6 apply. The only time the rates, terms and conditions in Section 5 apply is when carriers are taking services from Section 5." These assertions are contrary, however, to the plain language of section 5, which states that the carrier common line access charge applies to *each* switched access service provided under the tariff as a whole.

The petitioners urge us to uphold the PUC's interpretation of Tariff No. 85 because, they contend, it is reasonable in light of the evolution of the telephone industry since the tariff was first adopted. Were we to review the PUC's tariff interpretation deferentially for mere reasonableness or rationality, we might find this argument persuasive. *See Bradshaw v. Wilkinson Water Co.*, 94 P.3d 242, 245 (Utah 2004). We review the PUC's tariff interpretation *de novo*, however, and although we "approach the task of examining some of the complex scientific issues presented in cases of this sort with some diffidence," we are obliged to give effect to the plain language used in the tariff. *Appeal of Conservation Law Foundation*, 127 N.H. at 616 (quotation and brackets omitted). "That is our responsibility no less than it is our obligation to refrain from arrogating to ourselves the role of a public utilities commission." *Id.* If the tariff should be amended, it should be amended as a result of regulatory process, and not by a decision of this court.

For all of the foregoing reasons, therefore, we reverse the PUC's decision.

*Reversed.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.