Public Utilities Commission
Nos. 2009-168
2009-432

APPEAL OF UNION TELEPHONE COMPANY d/b/a UNION
COMMUNICATIONS
(New Hampshire Public Utilities Commission)

Argued: January 20, 2010
Opinion Issued: May 20, 2010

*Murtha Cullina LLP*, of Boston, Massachusetts (*Olga L. Bogdanov* and *Robert J. Munnelly, Jr.* on the brief, and *Mr. Munnelly* orally), for petitioner MetroCast Cablevision of New Hampshire, LLC.

IDT America, Corp., filed no brief.

*Rothfelder Stern, L.L.C.*, of Westfield, New Jersey (*Martin C. Rothfelder* on the brief and orally), for Union Telephone Company d/b/a Union Communications.

*Michael A. Delaney*, attorney general (*Glenn A. Perlow*, assistant attorney general, on the brief and orally), for the State.

*Devine, Millimet & Branch, P.A.*, of Concord (*Frederick J. Coolbroth & a.* on the brief), for Bretton Woods Telephone Company, Inc., Dixville Telephone Company, Dunbarton Telephone Company, Inc., Granite State Telephone, Inc., Kearsarge Telephone Company, and Merrimack County Telephone Company, as *amici curiae*.

DALIANIS, J. In these consolidated appeals, Union Telephone Company d/b/a Union Communications (Union) appeals orders of the New Hampshire Public Utilities Commission (PUC) denying Union's motions to rescind the PUC's grants of authority to the petitioners, MetroCast Cablevision of New Hampshire, LLC (MetroCast) and IDT America, Corp. (IDT), to operate as competitive local exchange carriers in Union's service territory. We reverse and remand.

The record reveals the following facts. Union is a small incumbent local exchange carrier that operates in Alton, Barnstead, Center Barnstead, Farmington, Gilmanton, New Durham and Strafford. On September 19, 2008, MetroCast applied to the PUC to amend its certification as a competitive local exchange carrier to include Union's service territory in addition to its existing service in the territory of Northern New England

Telephone Operations LLC, d/b/a FairPoint Communications (FairPoint). On September 30, 2008, the PUC granted MetroCast's application. *See* RSA 374:22-g (2009); N.H. ADMIN. RULES, PUC 431.01.

IDT provides telecommunications services jointly with MetroCast. On February 27, 2009, IDT applied to amend its certification as a competitive local exchange carrier to include Union's service territory in addition to the existing service it provides in FairPoint's territory. The PUC granted IDT's application on March 3, 2009.

Union filed motions with the PUC to rescind the authority granted to MetroCast and IDT to operate in its service territory, which the PUC denied. These appeals followed.

*I. Standing*

We first address MetroCast's assertion that Union lacks standing to appeal the PUC's orders. To have standing to appeal an administrative agency decision to this court, a party must demonstrate that its rights "may be directly affected by the decision, or in other words, that [it] has suffered or will suffer an injury in fact." *Appeal of Richards*, 134 N.H. 148, 154 (quotations and citations omitted), *cert. denied*, 502 U.S. 899 (1991); *see* RSA 541:3 (2007).

MetroCast argues that Union lacks standing because it has failed to show a direct injury from the PUC's decisions. MetroCast contends that "[t]he potential for increased competition in . . . Union['s] territory, even if true, is insufficient to establish injury." We hold that, because Union will face competition in its service area as a result of the PUC's orders, Union has standing to appeal them. *See New Hampshire Bankers Ass'n v. Nelson*, 113 N.H. 127, 129 (1973).

*II. Standard of Review*

A party seeking to set aside an order of the PUC has the burden of demonstrating that the order is contrary to law or, by a clear preponderance of the evidence, that the order is unjust or unreasonable. RSA 541:13 (2007); *see Appeal of Verizon New England*, 153 N.H. 50, 56 (2005). Findings of fact by the PUC are presumed *prima facie* lawful and reasonable. RSA 541:13; *see Appeal of Verizon New England*, 153 N.H. at 56. Moreover, we deferentially review PUC orders such as the ones at issue. *See Appeal of Verizon New England*, 158 N.H. 693, 695 (2009). "When we are reviewing agency orders which seek to balance competing economic interests, or which anticipate such an administrative resolution, our responsibility is not to supplant the PUC's balance of interests with one more nearly to our liking." *Id.* (quotation, ellipsis and brackets omitted).

"The statutory presumption, and the corresponding obligation of judicial deference are the more acute when we recognize that discretionary choices of policy necessarily affect such decisions, and that the legislature has entrusted such policy to the informed judgment of the [PUC] and not to the preference of reviewing courts." *Appeal of Conservation Law Foundation*, 127 N.H. 606, 616 (1986) (quotation omitted). While we give the PUC's policy choices considerable deference, we review the PUC's statutory interpretation *de novo. See Appeal of Verizon New England*, 158 N.H. at 695.

### III. Union's Arguments

Union argues that the PUC erred when it processed the applications of MetroCast and IDT pursuant to NEW HAMPSHIRE ADMINISTRATIVE RULES, PUC 431.01 and failed to afford Union prior notice and a hearing as required by RSA 374:26 (2009) and the Due Process Clause of the Federal Constitution. *See* U.S. CONST. amends. V, XIV. We address these arguments in turn.

#### A. Rule 431.01

The PUC processed the applications of MetroCast and IDT to serve as competitive local exchange carriers in Union's territory pursuant to Rule 431.01, which provides that "[b]efore commencing operations as a [competitive local exchange carrier] in New Hampshire, the entity proposing to provide [this] service shall register with the [PUC]" by filing certain materials and forms. N.H. ADMIN. RULES, PUC 431.01(b), (c). Unless the PUC denies the request, the PUC "shall issue a[n] . . . authorization number which authorizes the applicant to provide competitive local exchange service in the territory of non-exempt [incumbent local exchange carriers]." N.H. ADMIN. RULES, PUC 431.01(d).

Rule 402.33 defines a non-exempt incumbent local exchange carrier as a carrier "that is not exempt pursuant to 47 U.S.C. § 251(f)." N.H. ADMIN. RULES, PUC 402.33. Union *is* an exempt incumbent local exchange carrier within the meaning of Rules 431.01(d) and 402.33. Accordingly, Union contends that the PUC erred by applying the process under Rule 431.01 to it.

To place Union's arguments in context, we believe that a brief summary of federal law is warranted. "Until the 1990's, local phone service was thought to be a natural monopoly." *AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 371 (1999). "States typically granted an exclusive franchise in each local service area to a local exchange carrier . . . , which owned, among other things, the . . . wires connecting telephones to switches[], the . . . equipment

directing calls to their destinations[], and the . . . wires carrying calls between switches[] that constitute a local exchange network." *Id.* When technological advances made competition among providers of local service seem possible, Congress enacted the Telecommunications Act of 1996 (the Telecommunications Act), of which 47 U.S.C. § 251(f) (2006) is a part, to "end[] the longstanding regime of state-sanctioned monopolies," *AT & T Corp.*, 545 U.S. at 371, and "to . . . create a national telecommunications policy that strongly favor[s] competition in the local market." *Global Naps, Inc. v. Verizon New England*, 444 F.3d 59, 61-62 (1st Cir. 2006) (quotation omitted); *see Verizon Maryland Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 638 (2002). To achieve these goals, the Telecommunications Act fundamentally restructured local telephone markets. *AT & T Corp.*, 525 U.S. at 371.

Pursuant to the Telecommunications Act, "incumbent [local exchange carriers] are subject to a host of duties intended to facilitate market entry." *Id.* Chief among them is the local exchange carrier's obligation "to allow competitive local exchange carriers . . . to interconnect with their networks." *Global Naps.*, 444 F.3d at 62; *see* 47 U.S.C. § 251(a)(1). By imposing such duties upon incumbent local exchange carriers, the Act "neutraliz[es] the competitive advantage inherent in incumbent carriers' ownership of the physical networks required to supply telecommunications services." *Pacific Bell v. Pac West Telecomm, Inc.*, 325 F.3d 1114, 1118 (9th Cir. 2003). As a "rural telephone company," 47 U.S.C. § 153(37) (2006), Union is exempt from some of these duties. *See* 47 U.S.C. § 251(c) (2006), (f) (exempting rural telephone companies from duties set forth under paragraph (c)). "By granting rural and small [local exchange carriers] relief from interconnection obligations instead of an outright prohibition on competition, . . . Congress demonstrated its intent to open *all* markets to potential competitors — even markets served by rural or small [local exchange carriers] that may qualify for interconnection relief." *In the Matter of Silver Star Telephone Company, Inc.*, 12 F.C.C.R. 15,639, 15,659 (1997) (emphasis added), *aff'd by RT Communications, Inc. v. F.C.C.*, 201 F.3d 1264 (10th Cir. 2000).

Union's exemption from some of these interconnection requirements, however, is not absolute. The PUC *must* "terminate the exemption" within 120 days of receiving notice that a carrier has made a bona fide request for interconnection "if the request is not unduly economically burdensome, is technically feasible," and is consistent with certain other provisions of the Act. 47 U.S.C. § 251(f)(1)(B). Under the federal scheme, the party requesting interconnection with a rural telephone company must submit a notice of its request to the state commission, and the state commission must then "conduct an inquiry" to determine "whether to terminate the exemption"

enjoyed by the rural telephone company. *Id.* In this inquiry, the rural telephone company bears the burden of proving that it remains entitled to the exemption set forth under 47 U.S.C. § 251(f) by showing that terminating the exemption "would be likely to cause undue economic burden beyond the economic burden that is typically associated with efficient competitive entry." 47 C.F.R. § 51.405(c) (2009).

Union's duties under federal law to provide potential competitive local exchange carriers with interconnection to its network are *not* at issue in this appeal. Rather, this appeal concerns whether the PUC erred merely in allowing another telecommunications carrier to provide service in Union's area. *See* 47 U.S.C. § 251(a)(1); RSA 374:22-g. In other words, in the proceeding at issue, the PUC made no determination regarding Union's entitlement to exemption from interconnection requirements under federal law.

With this background in mind, we turn to the parties' arguments regarding Rule 431.01. While Union argues that the PUC erred by using the process set forth in Rule 431.01 because it applies only to companies that are *not* exempt under federal law, the PUC counters that its reliance upon Rule 431.01 was lawful. The PUC asserts that, beginning in 2008, when the legislature repealed RSA 374:22-f and amended RSA 374:22-g to require that the areas of *all* incumbent local exchange carriers be open to competition, the PUC could no longer restrict the process in Rule 431.01 to carriers that were not exempt under federal law.

Before the legislature repealed RSA 374:22-f, which pertained specifically to incumbent local exchange carriers with fewer than 25,000 access lines, and amended RSA 374:22-g, which had previously stated that only incumbent local exchange carriers with more than 25,000 access lines had nonexclusive franchises, a competitive local exchange carrier was not entitled to enter the territory of a rural incumbent local exchange carrier like Union, which, according to Union's pleadings, has fewer than 8,000 access lines. Once the legislature repealed RSA 374:22-f and amended RSA 374:22-g, incumbent local exchange carriers with fewer than 25,000 access lines became subject to competition in their own territories for the first time.

■ ■ The PUC reasoned that because the legislature subjected all incumbent local exchange carriers to competition, including small, rural carriers like Union, it was required to extend the process under Rule 431.01 to all incumbent local exchange carriers. This reasoning is flawed. Although the PUC now must allow competitive local exchange carriers access to the territories of all incumbent local exchange carriers, regardless of whether they are exempt under federal law from certain interconnection require-

ments, the PUC may not act contrary to the plain meaning of Rule 431.01. Accordingly, the PUC may not apply Rule 431.01 to Union, which is *exempt* under federal law, because Rule 431.01 on its face applies only to *non-exempt* utilities. "The law of this State is well settled that an administrative agency must follow its own rules and regulations, and that an agency's interpretation of its own regulations is erroneous as a matter of law when it fails to embrace the plain meaning of its regulations." *Attitash Mt. Service Co. v. Schuck*, 135 N.H. 427, 429 (1992) (quotations and citations omitted). Therefore, the PUC erred by applying Rule 431.01 to Metrocast's and IDT's applications to provide telephone service in Union's territory. To determine whether the process used by the PUC was, nevertheless, lawful, we turn to Union's remaining arguments. *See Smith v. N.H. Bd. of Psychologists*, 138 N.H. 548, 552 (1994) (expiration of board's rules did not preclude board from exercising its statutory authority to determine if the plaintiffs' conduct was unprofessional).

### B. Union's Statutory Right to Notice and Hearing

Union grounds its entitlement to prior notice and a hearing in RSA 374:26. This court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Appeal of Verizon New England*, 153 N.H. at 63. In interpreting a statute, we first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. *Id.* Unless we find that the statutory language is ambiguous, we need not look to legislative intent. *Id.* Furthermore, we interpret statutes in the context of the overall statutory scheme and not in isolation. *Id.*

■ RSA 374:26 provides, in pertinent part: "The commission shall grant such permission whenever it shall, *after due hearing*, find that such engaging in business, construction or exercise of right, privilege or franchise would be for the public good, and not otherwise." (Emphasis added.) The "permission" to which RSA 374:26 refers is that which the PUC may grant pursuant to RSA 374:22 (2009), which provides, in pertinent part:

> No person or business entity shall commence business as a public utility within this state, or shall engage in such business, or begin the construction of a plant, line, main or other apparatus or appliance to be used therein, in any town in which it shall not already be engaged in such business, or shall exercise any right or privilege under any franchise not theretofore actually exercised in such town, without first having obtained the permission and approval of the commission.

RSA 374:22, I; *see Appeal of Public Serv. Co. of N.H.*, 141 N.H. 13, 16-17 (1996). Here, RSA 374:22 obligated MetroCast and IDT to request permission from the PUC before commencing telephone service in Union's service territory. Pursuant to the plain language of RSA 374:26, therefore, the PUC was required to hold a hearing before deciding whether to grant such permission.

MetroCast argues that RSA 374:22-g supplants the hearing required by RSA 374:26. RSA 374:22-g provides, in pertinent part:

> I. To the extent consistent with federal law and notwithstanding any other provision of law to the contrary, all telephone franchise areas served by a telephone utility that provides local exchange service, subject to the jurisdiction of the commission, shall be nonexclusive. The commission, upon petition or on its own motion, shall have the authority to authorize the providing of telecommunications services, including local exchange services, and any other telecommunications services, by more than one provider, in any service territory, when the commission finds and determines that it is consistent with the public good unless prohibited by federal law.

> II. In determining the public good, the commission shall consider the interests of competition with other factors including, but not limited to, fairness; economic efficiency; universal service; carrier of last resort obligations; the incumbent utility's opportunity to realize a reasonable return on its investment; and the recovery from competitive providers of expenses incurred by the incumbent utility to benefit competitive providers, taking into account the proportionate benefit or savings, if any, derived by the incumbent as a result of incurring such expenses.

MetroCast correctly notes that no hearing is required by the plain language of RSA 374:22-g. In considering the factors comprising the "public good" determination, *see* RSA 374:22-g, II, the PUC may rely not only upon written submissions, but may also rely upon its own expertise and that of its staff. *See New England Tel. & Tel. Co. v. State*, 113 N.H. 92, 101-02 (1973). MetroCast contends that to the extent that the hearing requirement set forth in RSA 374:26 conflicts with the lack of hearing requirement set forth in RSA 374:22-g, RSA 374:22-g governs because it was enacted later than RSA 374:26 and addresses the subject at hand more specifically. *See Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 283 (1988), *appeal dismissed*, 488 U.S. 1035 (1989).

■ MetroCast's reliance upon this principle of statutory construction is misplaced because RSA 374:22-g and RSA 374:26 can be construed harmoniously. *See State v. Patterson*, 145 N.H. 462, 466 (2000). "Where reasonably possible, statutes should be construed as consistent with each other." *Appeal of Derry Educ. Assoc.*, 138 N.H. 69, 71 (1993). "When interpreting two statutes which deal with similar subject matter, we will construe them so that they do not contradict each other, and so that they will lead to reasonable results and effectuate the legislative purpose of the statute." *Appeal of Campaign for Ratepayer Rights*, 142 N.H. 629, 631 (1998) (quotation omitted).

■ We conclude that when RSA 374:26 and RSA 374:22-g are read together, RSA 374:22-g must be construed to require the PUC to hold a hearing before deciding whether to allow a telephone utility to compete in the service area of another telephone utility. A contrary construction would defeat the legislative intent underlying RSA 374:22-g, which is to require the PUC to conduct a searching inquiry before determining whether it is consistent with the public good to allow more than one provider to provide telecommunications services in a single area.

■ RSA 374:26 sets the standard by which the PUC may grant or withhold permission to an entity seeking to expand its existing franchise. *See Appeal of Public Serv. Co. of N.H.*, 141 N.H. at 16-17. Pursuant to RSA 374:26, such permission may not be granted unless the PUC finds "that such engaging in business, construction or exercise of right, privilege or franchise would be for the public good, and not otherwise." *See id.* RSA 374:22-g sets forth the numerous factors the PUC must consider when determining whether allowing more than one provider to provide telecommunications services in a single territory is for the "public good." Several of these factors concern the impact that granting such permission will have on the incumbent local exchange carrier, such as its "opportunity to realize a reasonable return on its investment" and to comply with its "carrier of last resort obligations." RSA 374:22-g, II. Requiring the PUC to hold a hearing before allowing competitors to provide telephone service in a telephone utility's service area is consistent with the PUC's statutory obligation to consider these factors. Accordingly, we hold that the hearing requirement set forth in RSA 374:26 applies to proceedings under RSA 374:22-g.

■ Alternatively, MetroCast argues that federal law preempts any state statutory requirement that the PUC provide an incumbent local exchange carrier with prior notice and a hearing before allowing a competitor to provide service in its service area. MetroCast contends that a prior notice and hearing requirement constitutes a barrier to competition, which

violates the Telecommunications Act. *See* 47 U.S.C. § 253 (2006); *AT & T Corp.*, 525 U.S. at 371 (Pursuant to Telecommunications Act, "States may no longer enforce laws that impede competition.").

■ The Supremacy Clause of Supremacy Clause of Article VI of the Federal Constitution gives Congress the power to preempt state law. *Lousiana Public Service Comm'n v. FCC*, 476 U.S. 355, 368 (1986). "Under the Supremacy Clause of the Federal Constitution, state law is preempted where: (1) Congress expresses an intent to displace state law; (2) Congress implicitly supplants state law by granting exclusive regulatory power in a particular field to the federal government; or (3) state and federal law actually conflict." *Carlisle v. Frisbie Mem. Hosp.*, 152 N.H. 762, 770 (2005) (quotation omitted). "An actual conflict exists when it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishments and execution of the full purpose and objective of Congress." *Id.* (quotation omitted).

■ While Congress enacted the Telecommunications Act "to ensure that telecommunications providers have competitive access to state and local telecommunications markets," it also recognized the continuing need for state and local regulation. *Puerto Rico v. Municipality of Guayanilla*, 450 F.3d 9, 15 (1st Cir. 2006). The provisions of section 253 of the Telecommunications Act "balance these interests." *Id.*

47 U.S.C. § 253(a) provides: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." Additionally, 47 U.S.C. § 253(d) provides:

> If, after notice and an opportunity for public comment, the Commission determines that a State or local government has permitted or imposed any statute, regulation, or legal requirement that violates subsection (a) . . . , the Commission shall preempt the enforcement of such statute, regulation, or legal requirement to the extent necessary to correct such violation or inconsistency.

■ Notwithstanding the above, the Telecommunications Act also expressly allows "a State to impose, on a competitively neutral basis . . . requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers." 47 U.S.C. § 253(b).

■ "It is well-established that § 253(a) authorizes preemption of state and local laws and regulations expressly or effectively prohibiting the ability of any entity to provide telecommunications service." *Municipality of Guayanilla*, 450 F.3d at 16 (quotation omitted); *see Nixon v. Missouri Municipal League*, 541 U.S. 125, 128 (2004). To determine whether a state law has the effect of prohibiting the provision of telecommunications services, courts and the Federal Communications Commission (FCC) consider whether the law "materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *Municipality of Guayanilla*, 450 F.3d at 18 (quotations omitted). "[A] prohibition does not need to be complete or insurmountable to run afoul of § 253(a)." *Id.* (quotation omitted); *see In the Matter of American Communications Services, Inc.*, 14 F.C.C.R. 21,579, 21,616-21 (1999) (federal law preempts certain provisions of Arkansas law that make it more difficult for another carrier to compete in area served by rural telephone company); *Re Sprint Communications Company L.P.*, No. 6055-NC-103, 2008 WL 2787762, at *8 (Wisconsin Public Service Commission May 9, 2008) (federal law preempts state statute requiring prior hearing because it creates substantive and procedural constraint upon ability of potential competitor to provide local exchange services).

The PUC did not reach the federal preemption issue because it determined that Union had no right to prior notice and a hearing. Because resolving whether federal law preempts such a requirement may entail additional fact finding, we remand this issue to the PUC for resolution in the first instance. *See In the Matter of Clark & Clark*, 154 N.H. 420, 426 (2004).

*C. Union's Alleged Due Process Right to Notice and Hearing*

Although we ordinarily decide constitutional issues only when necessary, *Simplex Technologies v. Town of Newington*, 145 N.H. 727, 732 (2001), in the interest of judicial efficiency we address whether, in addition to its statutory right to prior notice and a hearing, Union had a constitutional right to the same.

Union argues that "[c]onstitutional due process also requires that [it] receive notice and an opportunity for a hearing in this matter." Because Union has not invoked a specific due process provision of the State Constitution, we limit our due process analysis to the Federal Constitution. *See WMUR Channel Nine v. N.H. Dep't of Fish & Game*, 154 N.H. 46, 48-49 (2006).

■ "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests

is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The first inquiry in every due process challenge, therefore, is whether there has been a deprivation of a protected interest in life, liberty or property. *See American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Only after finding the deprivation of a protected interest do we look to see if the procedures employed comport with due process. *Id.*

The deprivation at issue here is the deprivation of Union's exclusive franchise. Accordingly, to succeed on its due process challenge, Union must establish that it has a protected property interest in maintaining its exclusive franchise. To have a property interest in a benefit, such as an exclusive franchise, "a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it." *Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quotations omitted). "He must, instead, have a legitimate claim of entitlement to it." *Id.* (quotation omitted). "Such entitlements are, of course, not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* (quotations and ellipsis omitted). "Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Id.* at 757 (quotations and emphasis omitted).

The current statutory scheme fails to grant Union a legitimate claim of entitlement to an exclusive franchise. As we noted earlier in this opinion, RSA 374:22-g, as amended in 2008, makes clear that "all telephone franchise areas served by a telephone utility that provides local exchange service . . . shall be *non*exclusive." (Emphasis added.) Accordingly, Union has no protected property interest in its exclusive franchise and, therefore, no right to a due process hearing to protect such an interest. *See Re Sprint Communications Company L.P.*, 2008 WL 2787762, at *8 (ruling that rural incumbent local exchange carriers had no protected property interest in their exclusive franchises, and, therefore, no due process right to hearing).

Union correctly notes that under RSA 374:22-g, II, in making its determination regarding whether "it is consistent with the public good" to authorize one telephone utility to provide local exchange services in the territory of another telephone utility, the PUC must consider "the incumbent utility's opportunity to realize a reasonable return on its investment." Union also correctly observes that a public utility's opportunity or ability to realize a reasonable return on its investment is a property interest entitled to constitutional protection. *See Duquesne Light Co. v. Barasch*, 488 U.S. 299, 307-08 (1989). The process under consideration here, however, is *not* a

rate setting proceeding in which Union's right to realize a reasonable return on its investment would be decided. Accordingly, the fact that the PUC must take Union's opportunity to realize a reasonable return on its investment into consideration when deciding whether it is consistent with the public good to allow MetroCast and IDT to provide service in Union's territory is of no moment.

In sum, we hold that Union has no constitutional right, but has a statutory right, to prior notice and a hearing. We remand to the PUC to determine in the first instance whether federal law preempts this state statutory requirement.

*Reversed and remanded.*

BRODERICK, C.J., and DUGGAN, HICKS and CONBOY, JJ., concurred.