Public Utilities Commission
No. 2011-892

APPEAL OF BRETTON WOODS TELEPHONE COMPANY, INC. & a.
(New Hampshire Public Utilities Commission)

Argued: September 12, 2012
Opinion Issued: November 28, 2012

380

*Devine, Millimet & Branch, P.A.*, of Manchester (*Harry N. Malone & a.* on the brief, and *Mr. Malone* orally), for the petitioners.

*Carolyn Cole*, of Lebanon, by brief and orally, for intervenor segTEL, Inc.

*Murtha Cullina LLP*, of Boston, Massachusetts (*Olga L. Gordon* and *Robert J. Munnelly, Jr.* on the brief, and *Mr. Munnelly* orally), for intervenor New England Cable and Telecommunications Association, Inc.

LYNN, J. The petitioners, Bretton Woods Telephone Company, Inc., Dixville Telephone Company, Dunbarton Telephone Company, Inc., and Granite State Telephone, Inc., four exempt incumbent rural local exchange carriers (RLECs), appeal an order of the New Hampshire Public Utilities Commission (PUC) denying their motion to rescind or declare null and void registrations of competitive local exchange carriers (CLECs) authorized by the PUC to engage in business as telephone utilities in the service territories of RLECs. We affirm.

This appeal follows our decision in *Appeal of Union Telephone Co.*, 160 N.H. 309 (2010). In that case, we held that an incumbent RLEC is entitled to prior notice and a hearing under RSA 374:26 (2009) before the PUC grants authority to a CLEC to enter the service territory of the RLEC. *Appeal of Union Tel. Co.*, 160 N.H. at 319. As a matter of statutory interpretation, we rejected the argument that RSA 374:22-g (2009), enacted after RSA 374:26, supplanted this requirement of prior notice and a hearing. *Id.* RSA 374:22-g provides:

> I. To the extent consistent with federal law and notwithstanding any other provision of law to the contrary, all telephone franchise areas served by a telephone utility that provides local exchange service, subject to the jurisdiction of the commission, shall be nonexclusive. The commission, upon petition or on its own motion, shall have the authority to authorize the providing of telecommu-

nications services, including local exchange services, and any other telecommunications services, by more than one provider, in any service territory, when the commission finds and determines that it is consistent with the public good unless prohibited by federal law.

II. In determining the public good, the commission shall consider the interests of competition with other factors including, but not limited to, fairness; economic efficiency; universal service; carrier of last resort obligations; the incumbent utility's opportunity to realize a reasonable return on its investment; and the recovery from competitive providers of expenses incurred by the incumbent utility to benefit competitive providers, taking into account the proportionate benefit or savings, if any, derived by the incumbent as a result of incurring such expenses.

III. The commission shall adopt rules, pursuant to RSA 541-A, relative to the enforcement of this section.

We reasoned that "the legislative intent underlying RSA 374:22-g . . . is to require the PUC to conduct a searching inquiry before determining whether it is consistent with the public good to allow more than one provider to provide telecommunications services in a single area." *Appeal of Union Tel. Co.*, 160 N.H. at 319. We noted, however, that § 253(a) of the federal Telecommunications Act of 1996, 47 U.S.C. § 253(a) (2006), may preempt the requirement of notice and a hearing, and remanded this issue to "the PUC to determine in the first instance whether federal law preempts this state statutory requirement."[1] *Appeal of Union Tel. Co.*, 160 N.H. at 323. On remand, the parties settled before the PUC could resolve this issue.

The petitioners here then instituted the underlying proceeding and requested that the PUC rescind or declare null and void the registrations of CLECs authorized by the PUC to operate as telephone utilities in the service territories of RLECs. Citing RSA 374:26 and RSA 374:22-g, among other statutes, the petitioners alleged that the PUC, before issuing the registrations, had failed to provide notice, hold hearings, and determine whether allowing such competition would be consistent with the public

---

[1] "Under the Supremacy Clause of the Federal Constitution, state law is preempted where: (1) Congress expresses an intent to displace state law; (2) Congress implicitly supplants state law by granting exclusive regulatory power in a particular field to the federal government; or (3) state and federal law actually conflict." *Appeal of Union Tel. Co.*, 160 N.H. at 321 (quotation omitted).

good. In light of our decision in *Appeal of Union Tel. Co.*, the petitioners specifically argued that federal law does not preempt these requirements.

To develop a factual record upon which to base its decision, the PUC granted petitions to intervene of segTEL, Inc. (segTEL), a CLEC authorized by the PUC to operate in service territories of RLECs, and New England Cable and Telecommunications Association (NECTA), a regional trade association representing private telecommunications providers. As part of the factual record, the PUC accepted briefing, testimony, and data requests and responses from the parties. Assuming no preemption, the parties and PUC staff stipulated to a multi-step adjudicative process that they understood New Hampshire law to require for "CLEC registration requests in a telephone utility service territory." According to the petitioners, the stipulation

> describ[es] the procedures to be followed in proceedings related to CLEC entry into RLEC territories should the [PUC] find RSA 374:26 and RSA 374:22-g not preempted . . . [and] provide[s] a baseline for the [PUC] to determine whether these CLEC entry proceedings would be so unduly burdensome so as to "prohibit or have the effect of prohibiting" telecommunications services in violation of Section 253(a) [of the Telecommunications Act].

The stipulation provides:

> a. Except as provided in Puc Rules Part 431, regarding registration in the service territory of a non-exempt [incumbent local exchange carrier], the CLEC will request entry into a telephone utility service territory via petition, application or other form of request.

> b. Public notice, commonly in the form of a Commission Order of Notice, will be published relative to the CLEC request and the nature of applicable Commission review. This Notice will be served on the affected RLECs serving the service territories for which entry is requested.

> c. The affected RLEC will be a mandatory party and other interested parties can petition to intervene in the proceeding.

> d. An initial Commission pre-hearing conference and technical session will be held to decide interventions and determine a schedule for procedural steps.

e. The RLEC and other parties will be afforded an opportunity to file testimony (initial and, in certain cases, rebuttal) on any relevant factor listed in RSA 374:22-g and other facts material to the CLEC request.

f. The parties will have the opportunity to propound discovery on testimony and other evidence offered prior to a public evidentiary hearing.

g. The parties will have the opportunity for a public evidentiary hearing to review and address evidence submitted for possible inclusion in the record.

h. The parties can file briefs and/or requests for findings of fact or law.

i. The Commission will issue an Order pursuant to RSA 363:17-b.

j. Parties can petition for reconsideration or appeal of an adverse Commission ruling pursuant to RSA 541:1, RSA 541:6 or other applicable appeal statutes.

The PUC ultimately denied the petitioners' request and ruled that § 253(a) of the Telecommunications Act preempts RSA 374:26 and RSA 374:22-g, II. Section 253(a) preempts state and local laws, regulations, and requirements that "prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a) (2006). With respect to the notice and hearing requirement of RSA 374:26, the PUC found that in enacting § 253(a), "Congress determined that it is for the public good to allow more than one carrier to operate in any territory," and that "[b]ecause the public good determination has already been made by Congress . . . no hearing is 'due'." The PUC also found preempted each of the factors enumerated in RSA 374:22-g, II for determining whether allowing a telecommunications provider to enter the service territory of another provider would be consistent with the public good. Addressing specifically the factors requiring consideration of the incumbent provider's opportunity to earn a reasonable return and ability to recover net expenses incurred because of competition, the PUC concluded that the "threat of financial harm cannot serve to deny entry to competitors." With regard to the factor of fairness, the PUC expressed concern that the state statute does not make clear how to evaluate fairness, or "how to assess 'fairness' to subsequent competitors after one has been granted authority to enter." The PUC also found that it

was not well-positioned to address the factor of economic efficiency because "[t]he marketplace will be the ultimate determinant whether a competitor is operating in an economically efficient manner, and it is not for the Commission to make that determination in the context of [a] competitor's petition for entry." Finally, with regard to the factors of universal service and carrier of last resort obligations, the PUC reasoned the Telecommunications Act does not allow the states to prohibit competitive entry because of these factors.

The PUC next determined that RSA 374:26 and RSA 374:22-g, II are not saved by § 253(b) of the Telecommunications Act, which allows states to impose requirements on a competitively neutral basis that are consistent with the Telecommunications Act's universal service provisions and "necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers." 47 U.S.C. § 253(b) (2006). The PUC found that § 253(b) did not save RSA 374:26 because competitively neutral requirements are necessarily of general applicability and cannot be imposed properly in an adjudicative process on a case-by-case basis. The PUC also found that § 253(b) did not save RSA 374:22-g, II because the factors enumerated therein are not "competitively neutral with respect to, and as between, all of the participants and potential participants in the market," but instead focus on injury to the incumbent telecommunications provider. Additionally, the PUC concluded that both statutes were inconsistent with the Telecommunications Act's universal service provisions and unnecessary "to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers." 47 U.S.C. § 253(b).

Having found these statutes preempted, the PUC concluded that it would "commence a rulemaking to address, in a competitively neutral manner, whether additional or modified requirements are necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers in the context of competitive entry." After the PUC denied the petitioners' motion for rehearing, this appeal followed.

On appeal, the petitioners limit their argument to challenging the PUC's determination that § 253 of the Telecommunications Act preempts RSA 374:22-g, II.[2] First, the petitioners contend that RSA 374:22-g, II does not fall within the proscription of § 253(a) because it does not "materially

---

[2] Because petitioners limit their preemption arguments to RSA 374:22-g, II, and refer to RSA 374:26 in passing only, we express no opinion on whether the PUC correctly found RSA 374:26

inhibit[] or limit[] the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *Appeal of Union Tel. Co.*, 160 N.H. at 321 (quotation omitted). Second, they contend that the PUC improperly found all of the factors specified in RSA 374:22-g, II preempted. Third, the petitioners allege the PUC failed to recognize that § 253(b) of the Telecommunications Act permits the imposition of "competitively neutral conditions on market entry in the interest of the public good."[3] Fourth, the petitioners contend that the PUC's order itself is unlawful and unreasonable "for failing to impose requirements on a competitively neutral basis" and by "establishing a regulatory scheme that is not competitively neutral among the universe of players[,] . . . consign[ing] the RLECs to competing on an unlevel playing field."

A party seeking to set aside an order of the PUC has the burden of demonstrating that the order is contrary to law or, by a clear preponderance of the evidence, that the order is unjust or unreasonable. RSA 541:13 (2007); *see Appeal of Union Tel. Co.*, 160 N.H. at 313. Findings of fact by the PUC are *prima facie* lawful and reasonable. RSA 541:13; *see Appeal of Union Tel. Co.*, 160 N.H. at 313. The statutory presumption and the corresponding obligation of judicial deference carry particular significance where, as here, discretionary choices of policy are at issue and the legislature has entrusted such policy determinations to the informed judgment of the PUC and not to the preference of reviewing courts. *Appeal of Union Tel. Co.*, 160 N.H. at 314. Still, while we give the PUC's policy choices considerable deference, we review the PUC's statutory interpretation *de novo*. *Id.*

■ To determine the preemptive reach of § 253 of the Telecommunications Act, "we first examine its language and structure and interpret it in accordance with federal policy taking into account whatever guidance, if any, state law may offer." *State v. Buchanan*, 155 N.H. 505, 506 (2007) (quotation omitted) (interpreting federal firearms law). We also keep in mind two general principles:

---

preempted. "We consider this argument to be insufficiently developed for appellate review." *Kilnwood on Kanasatka Condo. Unit Assoc. v. Smith*, 163 N.H. 751, 753 (2012).

[3] The petitioners also assert that the PUC failed to recognize that § 253(f) of the Telecommunications Act permits the imposition of certain entry requirements on a competitively neutral basis. 47 U.S.C. § 253(f) (2006). In denying the petitioners' motion for rehearing, the PUC explained that § 253(f) does not apply to the petitioners because they are exempt providers of local exchange services and § 253(f) applies only to non-exempt providers of local exchange services. 47 U.S.C. § 253(f)(1) (2006). On appeal, the petitioners have not challenged this reasoning, and, therefore, have not demonstrated that the PUC erred in finding § 253(f) inapplicable to this case.

First, because the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt state-law causes of action. In all preemption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

Second, analysis of the scope of the statute's preemption is guided by the oft-repeated comment that the purpose of Congress is the ultimate touchstone in every pre-emption case.

*Pelkey v. Dan's City Used Cars*, 163 N.H. 483, 488 (2012) (quotations, citations, ellipses, and brackets omitted); *see also Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). Ultimately, federal "preemption is a matter of law, which we review *de novo.*" *Carlisle v. Frisbie Memorial Hospital*, 152 N.H. 762, 770 (2005).

 Section 253 of the Telecommunications Act balances two competing interests: (1) competitive access for telecommunications providers to state and local telecommunications markets; and (2) limited state and local regulation of telecommunications providers. *Puerto Rico v. Municipality of Guayanilla*, 450 F.3d 9, 15 (1st Cir. 2006). Subsections (a) and (b) of § 253 illustrate this balance. Section 253(a) provides: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). Section 253(b) expressly allows "a State to impose, on a competitively neutral basis . . . requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers." 47 U.S.C. § 253(b).

 Congress enacted § 253(a) to "end[] the States' longstanding practice of granting and maintaining local exchange monopolies." *AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 405 (1999). According to courts and the Federal Communications Commission (FCC), § 253(a) preempts any state law that "materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *Appeal of Union Tel. Co.*, 160 N.H. at 321 (quotation omitted). A prohibition does not need to be complete or insurmountable to run afoul of § 253(a). *Id.*

■ Section 253(b), by contrast, is a safe-harbor provision for limited state regulation of telecommunications providers. Permissible state regulations must be competitively neutral, consistent with the Telecommunication Act's universal service provisions, and "necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers." 47 U.S.C. § 253(b); *see In the Matter of Silver Star Telephone Company, Inc.*, 12 F.C.C.R. 15639, 15657 (1997). Additionally, a court must find that a state law violates § 253(a) before engaging in analysis under § 253(b). *See TracFone Wireless v. Neb. Pub. Serv. Com'n*, 778 N.W.2d 452, 463-64 (Neb. 2010). In other words, § 253(b) is an affirmative defense to preemption under § 253(a). *Id.* It does not impose an independent, substantive limitation on the ability of states to regulate telecommunications providers. *See id.; see also BellSouth Telecommunications v. Town of Palm Beach*, 252 F.3d 1169, 1187 (11th Cir. 2001). "Subsection (a) is the only portion of section 253 that broadly limits the ability of states to regulate. All of the remaining subsections, including subsection (b), carve out defined areas in which states may regulate or continue to regulate, subject to certain conditions." *In the Matter of the Public Utility Commission of Texas & a.*, 13 F.C.C.R. 3460, 3481 (1997).

■ Turning to the merits of the appeal, we affirm the PUC's finding that § 253(a) of the Telecommunications Act preempts RSA 374:22-g, II. We reach this conclusion because we assume, without deciding, that the stipulation of the parties and PUC staff correctly interprets New Hampshire law, necessarily including RSA 374:22-g, II, to require completion of a multi-step adjudicative process before a CLEC may enter the service territory of an incumbent RLEC. Based on the PUC's factual finding that such an adjudicative process "would take months and possibly a year or more to complete," we are persuaded that RSA 374:22-g, II "materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *Appeal of Union Tel. Co.*, 160 N.H. at 321 (quotation omitted); *see Re Sprint Communications Company L.P.*, No. 6055-NC-103, 2008 WL 2787762, at *8 (Wisc. Pub. Serv. Comm. May 9, 2008) (finding that § 253(a) preempts state statute directing the Wisconsin Public Utilities Commission to hold a hearing to determine whether "public convenience and necessity require" it to allow a CLEC to enter into the service territory of an RLEC); *see also Lodi Tel. Co. v. Pub. Serv. Com'n.*, 55 N.W.2d 379, 383 (Wisc. 1952) (interpreting the language "public convenience and necessity require" from Wisconsin state statute to mean "is consistent with public necessity and convenience"). Although RSA 374:22-g, II may not form a complete or

insurmountable prohibition to competition, "a prohibition does not need to be complete or insurmountable to run afoul of section 253(a)." *Id.* (quotation omitted); *see Municipality of Guayanilla,* 450 F.3d at 18.

■ We also accept the PUC's finding that RSA 374:22-g, II is not competitively neutral and, therefore, not saved by § 253(b). We agree with the PUC that RSA 374:22-g, II impermissibly focuses on injury to the incumbent telecommunications provider and is "not competitively neutral with respect to, and as between, all of the participants and potential participants in the market." *See RT Communications, Inc. v. F.C.C.,* 201 F.3d 1264, 1267-69 (10th Cir. 2000) (finding state law preempted because it protected incumbent local exchange carriers from competition). RSA 374:22-g, II clearly favors an incumbent RLEC by permitting the PUC to prohibit competition based upon consideration of the incumbent's "opportunity to realize a reasonable return on its investment" and ability to recover net expenses incurred because of competition. *See In the Matter of AVR, L.P. d/b/a Hyperion of Tennessee, L.P.,* 14 F.C.C.R. 11064, 11071 (1999) ("[A] state legal requirement would not as a general matter be 'competitively neutral' if it favors incumbent LECs over new entrants (or vice-versa).").

Additionally, although the other factors listed in RSA 374:22-g, II do not, on their face, protect incumbent telecommunications providers from competition, we find significant the PUC's determination that "[i]n order for the Commission to impose requirements [on CLEC entry into service territories of incumbent RLECs] on a competitively neutral basis . . . they would properly be imposed by administrative rule and could not be imposed in an adjudicated process on a case-by-case basis." *See Re Sprint Communications Company L.P.,* 2008 WL 2787762, at *8 (finding that § 253(b) did not save state statute directing the Wisconsin Public Utilities Commission to hold a hearing to determine whether "public convenience and necessity require" it to allow a CLEC to enter into the service territory of an RLEC). Accordingly, in light of the stipulation of the parties and PUC staff that satisfaction of RSA 374:22-g, II would require an extensive case-by-case adjudicative process, which we accept for purposes of this appeal, we affirm the PUC's determination that RSA 374:22-g, II is not competitively neutral. Given that § 253(b) does not specifically address whether competitively neutral requirements may be imposed through such an adjudicatory process, we accord substantial deference to the PUC's finding that they may not. *Cf. Grand China v. United Nat'l Ins. Co.,* 156 N.H. 429, 434 (2007); *Appeal of Public Serv. Co. of N.H.,* 122 N.H. 1062, 1075 (1982) (the PUC has "expertise and knowledge of the industries it regulates").

As for the petitioners' final contention, that by having found RSA 374:22-g, II preempted, the "Commission's order itself establishes a regulatory scheme that is not competitively neutral, . . . consign[ing] RLECs to competing on an uneven playing field," we conclude that this argument is premature. The PUC explained that it would "commence a rulemaking to address, in a competitively neutral manner, whether additional or modified requirements are necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers in the context of competitive entry." Thus, because the PUC has not yet adopted such administrative rules, we conclude that this argument is not ripe for our review.

██ ██ Finally, because the PUC has indicated that it may adopt administrative rules to govern CLEC entry into the service territories of incumbent RLECs, we note that the PUC erred when it concluded that, in enacting § 253(a), "Congress determined that it is for the public good to allow more than one carrier to operate in any territory," and that the PUC is preempted "from deciding *not* to allow a telephone utility to compete in the service area of another telephone utility . . . ." Similarly, the PUC erred in reasoning that § 253(a) preempts "a statutorily required process that *could* have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." (Emphasis added; quotation omitted.) By inserting the word "could" before the statutory phrase "have the effect of prohibiting," the PUC erroneously expanded the statute's preemptive reach. *Cf. Sprint Telephony PCS, L.P. v. County of San Diego*, 543 F.3d 571, 578 (9th Cir. 2008) (en banc); *Level 3 v. City of St. Louis, Mo.*, 477 F.3d 528, 532 (8th Cir. 2007). The word "may" in § 253(a) does not mean "might possibly." *Sprint Telephony PCS, L.P.*, 543 F.3d at 578. Under a plain reading of § 253(a), a plaintiff "must show actual or effective prohibition, rather than the mere possibility of prohibition." *Level 3*, 477 F.3d at 532.

██ The correct standard for preemption under § 253(a) of the Telecommunications Act is whether a state law or regulation "materially inhibits or limits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *Appeal of Union Tel. Co.*, 160 N.H. at 321 (quotation omitted). Section 253(a), particularly when considered together with § 253(b), does not evince Congress's determination that competition in a single service territory *always* is in the public good. The PUC must still make this determination. RSA 374:22-g, I. In this case, we have found the stipulated process for compliance with RSA 374:22-g, II too burdensome and, therefore, preempted. We express no

opinion on whether, through rulemaking or otherwise, the PUC may develop an alternative, less burdensome process, that comports with both federal and state law..

*Affirmed.*

DALIANIS, C.J., and HICKS and CONBOY, JJ., concurred.