Public Utilities Commission
No. 2012-398

APPEAL OF NORTHERN NEW ENGLAND TELEPHONE OPERATIONS, LLC
d/b/a FAIRPOINT COMMUNICATIONS — NNE
(New Hampshire Public Utilities Commission)

Argued: April 11, 2013
Opinion Issued: August 21, 2013

268

*Orr & Reno, P.A.*, of Concord (*Susan S. Geiger* on the joint brief and orally), for the petitioner Freedom Ring Communications, LLC d/b/a BayRing Communications.

*Rich May, P.C.*, of Boston, Massachusetts (*Shaela McNulty Collins* and *Eric J. Krathwohl* on the joint brief), for petitioner Global Crossing Telecommunications, Inc., A Level 3 Company.

*BCM Environmental & Land Law PLLC*, of Concord (*Amy Manzelli* on the joint brief), and *Fagelbaum & Heller, LLP*, of Sherborn, Massachusetts (*Gregory M. Kennan* on the joint brief), for petitioner Choice One of New Hampshire, Inc., Conversent Communications of New Hampshire, LLC, CTC Communications Corp., and Lightship Telecom, LLC, all of which do business as Earthlink Business.

*Hinckley, Allen & Snyder, LLP*, of Concord (*Daniel M. Deschenes* on the joint brief), and *James A. Huttenhower*, of Chicago, Illinois, on the joint brief, for petitioner AT&T Corp.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Harry N. Malone* on the brief and orally), for the respondent, Northern New England Telephone Operations, LLC d/b/a FairPoint Communications — NNE.

DALIANIS, C.J. The respondent, Northern New England Telephone Operations, LLC d/b/a FairPoint Communications — NNE (FairPoint), appeals two orders of the New Hampshire Public Utilities Commission (PUC). The petitioners are all "competitive local exchange carriers." We affirm.

The record supports the following facts. On March 21, 2008, the PUC ordered Verizon New England, Inc. d/b/a Verizon New Hampshire (Verizon)

to stop imposing "carrier common line charges" upon certain telephone calls that did not require the use of Verizon's common line. The PUC found that Verizon did not provide switched access service in connection with these calls. On appeal, we reversed the PUC's decision. *See Appeal of Verizon New England,* 158 N.H. 693 (2009). Under the plain language of Verizon's access tariff (the Tariff), we concluded that Verizon was allowed to impose a "carrier common line access charge" (CCL charge) upon "each aspect of switched access service," and that "common line access" is only one component of switched access service. *Id.* at 696-97. It was undisputed that Verizon provided other aspects of switched access service with respect to the calls at issue. *Id.* at 697.

Following our decision, the PUC reopened the proceeding and ordered FairPoint, which had purchased Verizon's New Hampshire assets, to modify the Tariff to clarify that it could "charge CCL only when a FairPoint common line is used in the provision of switched access services." The PUC gave FairPoint thirty days to submit tariff revisions. Ultimately, on January 20, 2012, the PUC approved in part, and rejected in part, tariff revisions that FairPoint submitted within the single filing (the "tariff filing") on December 22, 2011. The PUC approved FairPoint's revision of the CCL charge, but rejected FairPoint's proposal to increase the rate of an interconnection charge under the Tariff. The PUC found that this portion of the tariff filing was submitted voluntarily and would be treated as "illustrative in the pending adjudication." Shortly thereafter, on February 3, 2012, the PUC granted the petitioners' motion to dismiss the portion of the docket related to the interconnection charge. The PUC determined that an order of the Federal Communications Commission (FCC) and sections of the Code of Federal Regulations capped the rate of the interconnection charge at the rate in effect on December 29, 2011. FairPoint unsuccessfully moved for reconsideration of both orders, and this appeal followed.

■ We begin with the standard of review. A party seeking to set aside an order of the PUC has the burden of demonstrating that the order is contrary to law or, by a clear preponderance of the evidence, is unjust or unreasonable. RSA 541:13 (2007); *see Appeal of Bretton Woods Tel. Co.,* 164 N.H. 379, 386 (2012). Findings of fact by the PUC are presumed *prima facie* lawful and reasonable. RSA 541:13; *see Appeal of Bretton Woods Tel. Co.,* 164 N.H. at 386. "When we are reviewing agency orders which seek to balance competing economic interests, or which anticipate such an administrative resolution, our responsibility is not to supplant the PUC's balance of interests with one more nearly to our liking." *Appeal of Pennichuck Water Works,* 160 N.H. 18, 26 (2010) (quotation omitted). "The statutory

presumption, and the corresponding obligation of judicial deference are the more acute when we recognize that discretionary choices of policy necessarily affect such decisions, and that the legislature has entrusted such policy to the informed judgment of the PUC and not to the preference of reviewing courts." *Id.* (quotation and brackets omitted). However, "[w]hile we give the PUC's policy choices considerable deference, we do not defer to its statutory interpretation; we review the PUC's statutory interpretation *de novo.*" *Id.*

Before addressing the merits of FairPoint's appeal, we first consider the petitioners' contention that several of FairPoint's arguments are untimely and should be dismissed because FairPoint did not move for rehearing within thirty days of each of the PUC orders giving rise to these arguments. In support of their position, the petitioners cite RSA 541:3, :4, :6 (2007), and the Note to New Hampshire Supreme Court Rule 10(1), which provides that to appeal an administrative agency order under RSA chapter 541, "the appealing party must have timely filed for a rehearing with the administrative agency." We note that motions for rehearing and appeals of PUC orders are governed by RSA chapter 541 except as otherwise provided. *See* RSA 365:21 (2009); *Appeal of Office of Consumer Advocate,* 148 N.H. 134, 135-36 (2002).

Resolution of this issue requires statutory interpretation. We are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole. *Appeal of Pennichuck Water Works,* 160 N.H. at 27. We interpret statutes not in isolation, but in the context of the overall statutory scheme. *Id.* Our analysis must start with consideration of the plain meaning of the relevant statutes, construing them, when reasonably possible, to effectuate their underlying policies. *Id.* Insofar as reasonably possible, we will construe the various statutory provisions harmoniously. *Id.*

■ ■ Based upon our review of RSA chapter 541, we reject the petitioners' argument. RSA 541:3 provides that an application for rehearing may be made within thirty days of "any order or decision" and may include arguments related to *"any matter* determined in the action or proceeding, or covered or included in the order." (Emphasis added.) RSA 541:4, in turn, provides that "[n]o appeal from any order or decision of the commission shall be taken unless the appellant shall have made application for rehearing as herein provided," and that "no ground not set forth therein shall be urged, relied on, or given any consideration by the court, unless the court for good cause shown shall allow the appellant to specify additional grounds." RSA 541:6 provides that "[w]ithin thirty days after the application for a rehearing is denied, or, if the application is granted, then within

thirty days after the decision on such rehearing, the applicant may appeal by petition to the supreme court." When read together, these sections establish that arguments may be raised on appeal if they relate to "any matter determined in the action or proceeding," were included in an application for rehearing within thirty days of "any order or decision," and the agency's ruling on the application was timely appealed to this court. When statutory language is clear, its meaning is not subject to modification. *See Rainville v. Lakes Region Water Co.*, 163 N.H. 271, 274 (2012). We find nothing in the statutory scheme that supports the petitioners' contention that FairPoint was required to move for rehearing of *every* PUC order that gave rise to the arguments it has raised on appeal. The record demonstrates that FairPoint timely moved for reconsideration of the orders at issue. Accordingly, we address FairPoint's arguments in turn.

FairPoint first argues that the PUC erred because it ordered FairPoint to submit tariff revisions that were "outside the scope of this proceeding." FairPoint relies upon a procedural order from November 2006 in which the PUC stated that it would not consider modification of the Tariff in the present proceeding. We are not persuaded by this argument.

█ █ In an order dated May 4, 2011, the PUC determined that, notwithstanding the November 2006 procedural order, "administrative convenience" dictated that it would consider modification of the Tariff without "assign[ing] a separate docket number to the proceeding." In PUC parlance, a proceeding is a "docketed case commenced by the [PUC]." N.H. ADMIN. RULES, Puc 102.16. FairPoint has not challenged this reasoning. Accordingly, we conclude that FairPoint has failed to demonstrate that the PUC's decision to order tariff revisions in the same proceeding was unjust or unreasonable. *See Appeal of Bretton Woods Tel. Co.*, 164 N.H. at 386 n.3 (finding party failed to demonstrate error because it did not challenge the PUC's reasoning). Although FairPoint has raised other arguments about why the tariff revisions ordered by the PUC were outside the scope of the proceeding, we do not consider these arguments because they were not included in FairPoint's motion for reconsideration. *See* RSA 541:4; *see, e.g., Appeal of Coffey*, 144 N.H. 531, 533 (1999) ("Issues not raised in the motion for rehearing cannot be raised on appeal.").

FairPoint next argues that there is insufficient evidence in the record to support the PUC's finding that the CCL charge is not a "contribution element." In its March 2008 order, the PUC rejected Verizon's argument that the CCL charge is "a contribution element not dedicated to the common line or designed to recover any costs of the common line itself." Instead, the PUC found that the charge was intended to recover and did recover a portion of the costs of Verizon's common line. We note that

FairPoint does not provide a definition of "contribution element." From our review of the record and the parties' arguments, we surmise that a "contribution element" is a charge that may be assessed to recover costs not associated with a particular service.

In reviewing FairPoint's argument, we are mindful that the PUC's findings of fact are presumed lawful and reasonable. RSA 541:13; *see Appeal of Bretton Woods Tel. Co.*, 164 N.H. at 386. It is the PUC's duty to resolve issues of fact and conflicts of opinion. *Appeal of Pennichuck Water Works*, 160 N.H. at 41. The PUC is not compelled to accept opinion evidence of any witness including expert witnesses, and may even reject uncontroverted evidence. *Id.*

The record demonstrates that the PUC received conflicting evidence about whether the CCL charge is a contribution element that could be imposed when a call did not require the use of Verizon's common line. Although Verizon submitted testimony that the CCL charge was designed to be a contribution element, AT&T, one of the petitioners, submitted testimony arguing that Verizon was "wrong in its argument that [the] CCL [charge] is a contribution element." Relying upon its understanding of past PUC decisions, AT&T argued that the CCL charge could be assessed only when a call traversed Verizon's common line. Accordingly, given AT&T's supporting testimony, we uphold the PUC's finding that the CCL charge is not "a contribution element not dedicated to the common line or designed to recover any costs of the common line itself." *See id.* at 41. Although FairPoint further argues that the PUC's explanation for its finding was insufficient under RSA 363:17-b, III (2009), FairPoint did not include this argument in its motion for reconsideration and we, therefore, will not address it. *See* RSA 541:4; *Appeal of Coffey*, 144 N.H. at 533.

FairPoint next argues that the PUC violated its due process rights under the State and Federal Constitutions by "prohibiting further proceedings" regarding the purpose of the CCL charge. FairPoint contends that it was denied a "meaningful opportunity to be heard" and that the PUC "prejudg[ed] the central issue in this case." FairPoint highlights that the PUC: (1) ruled that it would "not re-litigate the purpose or propriety of the CCL charge"; and (2) limited the scope of the proceeding to issues other than the purpose of the charge. We assume, without deciding, that FairPoint did not waive this argument. We first consider the argument under the State Constitution and rely on federal law only to aid in our analysis. *State v. Ball*, 124 N.H. 226, 231-33 (1983). "Where governmental action would affect a legally protected interest, the due process clause of the New Hampshire Constitution guarantees to the holder of the interest

the right to be heard at a meaningful time and in a meaningful manner." *Appeal of Pennichuck Water Works*, 160 N.H. at 36 (quotation omitted); *Appeal of Town of Nottingham*, 153 N.H. 539, 551 (2006) ("where issues of fact are presented for resolution by an administrative agency due process requires a meaningful opportunity to be heard" (quotation and brackets omitted)).

We conclude that the PUC did not deprive FairPoint of a meaningful opportunity to be heard when it concluded that further proceedings regarding the purpose of the CCL charge were unnecessary. First, FairPoint agreed to take the record "as is" when it intervened in the proceeding, thereby acknowledging that no further proceedings were necessary to decide issues already addressed. Second, FairPoint makes no argument that Verizon, its predecessor, lacked a meaningful opportunity to be heard regarding the purpose of the CCL charge. For example, FairPoint does not argue that the PUC denied Verizon the opportunity to present evidence regarding the purpose of the charge. Third, even if FairPoint had not agreed to take the record "as is," FairPoint has not identified any evidence that it would have presented had the PUC allowed further proceedings regarding the purpose of the CCL charge. *Cf. Ruel v. N.H. Real Estate Appraiser Bd.*, 163 N.H. 34, 44 (2011) ("A court will not set aside an agency's decision for a procedural irregularity . . . unless the complaining party shows material prejudice."); *Appeal of Concord Natural Gas Corp.*, 121 N.H. 685, 691 (1981).

FairPoint's lone citation of *Appeal of Concord Steam Corp.*, 130 N.H. 422 (1988), is not persuasive. In that case, we found that a public utility was denied a meaningful opportunity to be heard because it received "inadequate notice" that the PUC would make findings not germane to that proceeding that would be conclusive in later proceedings. *Appeal of Concord Steam Corp.*, 130 N.H. at 428-29. Here, FairPoint's due process argument is not predicated upon a lack of notice. Rather, FairPoint contends that it was denied a meaningful opportunity to be heard because the PUC did not allow it to "re-litigate the purpose or propriety of the CCL charge" given that those issues had been addressed earlier in the proceeding.

Because the Federal Constitution does not provide any greater protection than does the State Constitution with regard to FairPoint's due process claim, we reach the same result under the Federal Constitution. *See Appeal of Sch. Admin. Unit #44*, 162 N.H. 79, 89-90 (2011).

FairPoint next argues that the PUC erred by "failing to approve [its] tariff filing in a revenue-neutral manner," maintaining that the PUC's decision to approve revision of the CCL charge without approving

FairPoint's proposal to increase the interconnection charge under the Tariff "confiscat[ed] FairPoint's property in violation of Part I, Article 12 of the New Hampshire Constitution and the Fifth and Fourteenth Amendments [to] the Federal Constitution." Because this claim is not supported by an adequately developed legal argument, however, we need not address it further. *See Montenegro v. City of Dover*, 162 N.H. 641, 651 (2011). FairPoint neither cites the constitutional standard for confiscation of property nor provides *any* authority to support its assertion that the PUC confiscated its property. As we have repeatedly stated, "[j]udicial review is not warranted for complaints regarding adverse rulings without developed legal argument, and neither passing reference to constitutional claims nor off-hand invocations of constitutional rights without support by legal argument or authority warrants extended consideration." *Appeal of Omega Entm't*, 156 N.H. 282, 287 (2007).

 To the extent FairPoint argues that the PUC violated RSA 378:27 (2009), we reject this argument. RSA 378:27 provides that "rates shall be sufficient to yield not less than a reasonable return." *Cf.* RSA 378:28 (2009) (stating that provisions of RSA 378:27 regarding temporary rates shall, if possible, be applied in determining permanent rates). In its brief, FairPoint has not identified "the return" recovered under its rates. Thus, we have no basis upon which to conclude that FairPoint's return is, or is not, "reasonable." In short, FairPoint has made no effort to develop a legal argument demonstrating that the PUC violated RSA 378:27.

We next consider FairPoint's argument that the PUC erred when it found that an FCC order and two sections of the Code of Federal Regulations capped the rate of the interconnection charge at the rate in effect on December 29, 2011. *See* Connect America Fund, WC Docket No. 10-90, Report and Order and Further Notice of Proposed Rulemaking, 26 F.C.C.R. 17663 (2011); 47 C.F.R. § 51.907; 47 C.F.R. § 51.903(d). FairPoint asserts that the PUC erred when it found that the interconnection charge was a "residual rate element" capped at the rate in effect on December 29, 2011. *See* 47 C.F.R. § 51.903(d); 47 C.F.R. § 51.907(a). According to FairPoint, the interconnection charge is a "local transport element," not subject to the federal cap.

 However, the PUC found that, even if the interconnection charge was a local transport rate element, "the rate cap still applies." The PUC reasoned:

> Whether the Interconnection Charge at issue is a . . . local transport rate element applicable to Tandem-Switched Transport Access Service, [it is] subject to the cap imposed by the FCC. Accordingly, irrespective of the classification FairPoint gives to

the Interconnection Charge, it is subject to the cap . . . and may not be raised above the rate in effect on December 29, 2011.

FairPoint does not challenge the PUC's finding that, even if the interconnection charge were a "local transport rate element," it would be "applicable to Tandem-Switched Transport Access Service" and capped under federal law. *See* 47 C.F.R. § 51.907(a) (rate elements for services contained in the definition of "Tandem Switched Transport Access Services" are capped at the rates in effect on December 29, 2011). Given the record and the PUC's reasoning, we conclude that the PUC's finding that the rate of the interconnection charge was capped at the rate in effect on December 29, 2011, was not unlawful or unreasonable.

FairPoint next argues that the PUC erred when it did not review FairPoint's tariff filing under the time limit in RSA 378:6, I(b) (2009). RSA 378:6, I(b) provides:

Except as provided in RSA 378:6, IV, for all other schedules filed with the commission, the commission may, by an order served upon the public utility affected, suspend the taking effect of said schedule and forbid the demanding or collecting of rates, fares, charges or prices covered by the schedule for such period or periods, not to exceed 3 months from the date of the order of suspension, but if the investigation cannot be concluded within a period of 3 months, the commission in its discretion and with reasonable explanation may extend the time of suspension for 5 additional months.

We note that the record establishes that the PUC concluded that "no statutory timeframe" governed the portion of the tariff filing related to the CCL charge because it was not made voluntarily. Because FairPoint does not challenge this conclusion, we accept it for purposes of this appeal.

Even if we were to assume that the PUC should have reviewed the portion of the tariff filing related to the interconnection charge under the time limit in RSA 378:6, I(b), FairPoint cannot demonstrate material prejudice. *See Ruel*, 163 N.H. at 44 (noting that we "will not set aside an agency's decision for a procedural irregularity . . . unless the complaining party shows material prejudice"); *Appeal of Concord Natural Gas Corp.*, 121 N.H. at 691. Given our conclusion that the PUC did not err when it found that the rate of the interconnection charge was capped at the rate in effect on December 29, 2011, the PUC could not have increased the rate of the interconnection charge above the rate in effect as of that date. In other words, even if the PUC should have reviewed the portion of the tariff filing

related to the interconnection charge under the time limit in RSA 378:6, I(b), it still would have rejected FairPoint's proposal to increase the interconnection charge.

 Finally, FairPoint argues that the PUC erred when it approved the portion of the tariff filing related to the CCL charge but rejected and treated as "illustrative" the portion related to the interconnection charge. FairPoint contends that regardless of whether the PUC reviewed the tariff filing under the time limits in RSA 378:6, I(b) or RSA 378:6, IV (2009), the PUC was not permitted to "act on less than the entire tariff filing." We disagree. We have long recognized that, except in a few defined instances, the power of the PUC in setting public utility rates is plenary. *See Bacher v. Public Serv. Co. of N.H.*, 119 N.H. 356, 358 (1979) (noting that, except in a few defined instances, the power of the PUC in setting public utility rates is plenary). Although RSA 378:6, I(b) provides that the PUC may suspend a "schedule," and RSA 378:6, IV provides that the PUC may reject or amend "the filing," we are not persuaded that either statute indicates that the legislature intended to limit the PUC's power to approve or reject portions of a tariff filing submitted for its approval. We agree with the PUC that it "is not bound to only accept or reject a filing in its entirety, but may alter a filing in appropriate circumstances."

*Affirmed.*

HICKS, CONBOY and LYNN, JJ., concurred.