NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Public Utilities Commission
No. 2017-0452


APPEAL OF LAKES REGION WATER COMPANY, INC.
(New Hampshire Public Utilities Commission)

Submitted: April 12, 2018
Opinion Issued: November 28, 2018


Upton & Hatfield, LLP, of Portsmouth (Justin C. Richardson on the brief), for the petitioner.


Gordon J. MacDonald, attorney general (Laura E. B. Lombardi, senior assistant attorney general, on the brief), for the New Hampshire Public Utilities Commission.


HICKS, J. The petitioner, Lakes Region Water Company, Inc. (Lakes Region), appeals an order of the New Hampshire Public Utilities Commission (Commission) requiring Lakes Region to refund a second base charge it had imposed on its customer, Robert Mykytiuk, and prohibiting it from "imposing such charges unless and until they are included in the company's tariff." We affirm.

The following facts are taken from the Commission's orders or recount testimony given at the hearing on the merits. In March 2016, Lakes Region learned that Mykytiuk had constructed an additional structure on his property.

To supply the new structure with water, Mykytiuk had tapped into his primary residence's service connection.  Shortly after learning of the new construction, Lakes Region sent Mykytiuk an application for new service for the additional structure and requested to inspect the water service connection.

Lakes Region sent an inspector to Mykytiuk's property in May.  Despite concluding that the new structure required a separate service connection, Lakes Region chose not to install one at that time.  Rather, Lakes Region began billing Mykytiuk for an additional "base charge," which refers to the "[m]inimum charge per customer per quarter" scheduled in Lakes Region's tariff.  Mykytiuk complained to the Commission, asserting that he was not required to have a second service connection.  The Commission treated the matter as a formal complaint and held a hearing on the merits.

At the hearing, Mykytiuk argued that Lakes Region could not charge him a separate base charge or require him to install a separate meter for the additional structure because neither was provided for in Lakes Region's tariff. He testified that his additional structure is a "garage[] with bunkhouse" and that, according to his definition, a bunkhouse "is subordinate to a primary residence, [and] . . . contain[s] sleeping facilities, and may contain sanitary facilities, but does not contain cooking facilities."  He further testified that he rents out his primary residence by the week as a vacation rental, during which times he stays in the bunkhouse.

Lakes Region's utility manager testified that she considered Mykytiuk's service to his additional structure to be a "tandem connection" — which she, in turn, understood to mean a connection from the service line to a second place of consumption after the meter — prohibited by <u>New Hampshire Administrative Rules</u>, Puc 606.04(h).  According to her testimony, as summarized in the Commission's order, Lakes Region's tariff contains "no specific working definition about what tandem service is."  Furthermore, notwithstanding the conclusion that Mykytiuk had installed a prohibited tandem service, Lakes Region "decided not to disconnect [him] in April 2016 after being satisfied that there were no health concerns and that [he] had not bypassed recording water usage on the meter.  Moreover, Lakes Region did not want to cause an undue hardship on [him]."

Following the hearing, the Commission issued its order, finding that Lakes Region had no basis under its current tariff to impose the second base charge on Mykytiuk.  It ordered Lakes Region to refund those charges and further ordered that "Lakes Region shall not impose a second base charge on [Mykytiuk's] property . . . ,  until such time as Lakes Region receives approval to impose a second charge under the terms of a properly filed tariff amendment."  Lakes Region now appeals, arguing that the Commission erred in failing to: (1) apply both RSA 378:1 (2009) and its own rules; (2) explain its rules on rehearing; and (3) reconsider a new issue determined in its order.

We first set forth our standard of review.  "A party seeking to set aside an order of the [Commission] has the burden of demonstrating that the order is contrary to law or, by a clear preponderance of the evidence, is unjust or unreasonable."  Appeal of Northern New England Tele. Operations, LLC, 165 N.H. 267, 270 (2013); see RSA 541:13 (2007).  The Commission's findings of fact "are presumed prima facie lawful and reasonable."  Northern New England Tele., 165 N.H. at 270; see RSA 541:13.  We give the Commission's "policy choices considerable deference," but review its statutory interpretations de novo.  Northern New England Tele., 165 N.H. at 271 (quotation omitted).

Lakes Region first challenges the Commission's determination that it could not charge an additional base charge for the service to Mykytiuk's garage and bunkhouse.  Lakes Region concedes that its tariff "does not contain an express provision authorizing a second base charge for an additional residence."  Nevertheless, it attempts to justify Mykytiuk's second base charge through the interplay of several statutes and regulations.  For ease of reference, we set forth the relevant provisions here.  First, RSA 378:1 provides, in pertinent part:

> Every public utility shall file with the [Commission], and shall print and keep open to public inspection, schedules showing the rates, fares, charges and prices for any service rendered or to be rendered in accordance with the rules adopted by the commission pursuant to RSA 541-A . . . .

RSA 378:1.  Next, New Hampshire Administrative Rules, Puc 606.04 provides, in part, that "[n]o tandem services shall be permitted."  N.H. Admin R., Puc 606.04(j).  Finally, RSA 378:14 provides:

> No public utility shall grant any free service, nor charge or receive a greater or lesser or different compensation for any service rendered to any person, firm or corporation than the compensation fixed for such service by the schedules on file with the commission and in effect at the time such service is rendered.

RSA 378:14 (2009).

Lakes Region's argument begins with the assertion that its tariff, which applies to "all water service in the franchise area," specifically applies to water service "'rendered in accordance with the rules adopted by the commission.'"  (Quoting RSA 378:1.)  Lakes Region then points out that the Commission's rules specifically prohibit tandem services, N.H. Admin R., Puc 606.04(j)(2), which, according to Lakes Region, explains why its tariff does not include a rate for such service.  Nevertheless, Lakes Region argues, it must charge Mykytiuk a second service charge because his tandem service "carries a

significantly greater cost" than would be accounted for in the tariff's metered rate for actual water usage.

Specifically, Lakes Region cites the hearing testimony of the Director of the Commission's Gas and Water Division, Mark A. Naylor, who opined that "adding a second unit to an existing service . . . creates demand cost." Naylor explained that Lakes Region, like all utilities, is required "to be able to provide [its] peak demand, plus a safety factor over that, on a 365 day basis," and, thus, must have "facilities to meet its peak demand[]." According to Naylor:

> When you add additional places of consumption, when you add additional customers, which is what [Mykytiuk's situation] is, it adds to the peak demand. And that may not have an out-of-pocket cost today or tomorrow, [but] it will result in cost that the Company will have to face.

Lakes Region elaborates on the foregoing concepts in explaining the importance of the fixed customer charge or base charge in its scheduled rates:

> Lakes Region's systems, being located in New Hampshire's Lakes and White Mountain Regions, serve[] primarily seasonal customers who own second homes that may be unoccupied for prolonged periods. During off-peak seasons, use is low. However, during peak holiday periods such as during weekends in July and August, demand is high which requires larger storage tanks, larger pipe diameters, and larger treatment and production (wells and pumps) facilities. As a result, Lakes Region's rates are designed to recover the fixed capital costs to make service available during periods of peak demand. Its base per customer charge is high while its metered consumption is correspondingly low. . . . The addition of a summer vacation rental . . . places significant additional peak demand. Lakes Region does not recover the costs to serve this additional peak demand in the absence of an additional fixed customer charge.

Based upon all of the foregoing assertions, Lakes Region concludes that, in Mykytiuk's case, "allowing a second dwelling without a second customer charge would result in free or discounted service in violation of law." See RSA 378:14. More specifically, Lakes Region contends that "the Commission allowed [Mykytiuk] to maintain a second use in violation of Rule . . . 606.04 while paying rates that are less than required by RSA 378:1." It asserts that "[t]he Commission . . . fail[ed] to address the central issue in the proceeding" by failing to apply RSA 378:1 and its own rules as outlined above. We conclude, however, that the statutes and administrative rules at issue do not support Lakes Region's construction of them.

4

First, we note that the Commission made no finding as to whether the service to Mykytiuk's bunkhouse was or was not a tandem connection prohibited by Rule 606.04(j). The lack of such a finding, however, is immaterial to the disposition of this appeal, as we hold that, in any event, RSA 378:14 does not authorize the sort of self-help employed by Lakes Region here. To construe the statute as Lakes Region urges would render it internally inconsistent.

> No public utility shall grant any free service, nor <u>charge</u> or receive <u>a greater or lesser or different compensation</u> for any service rendered to any person, firm or corporation <u>than the compensation fixed for such service by the schedules on file with the commission</u> and in effect at the time such service is rendered.

RSA 378:14 (emphases added). Here, in an ostensible attempt to avoid providing free or discounted service, Lakes Region charged a fee different from the rates scheduled in its tariff. Thus, rather than being authorized by RSA 378:14, the second base charge billed to Mykytiuk actually violates it. If, as Lakes Region contends, "allowing a second dwelling without a second customer charge would result in free or discounted service in violation of law," then its remedy would be, as the Commission suggested, to "propose revisions to its tariff to address [such] situations."

Our cases make clear that the Commission is responsible for ensuring that a utility's rates are not discriminatory, preferential, or unfair. <u>See</u> <u>Granite State Alarm Inc. & a. v. New England Tel. & Tel.</u>, 111 N.H. 235, 237 (1971) ("It is the duty of the commission . . . to see that under the tariff proposed by the company no class of service is discriminated against or receives preferential treatment."); <u>Chicopee Mfg. Co. v. Company</u>, 98 N.H. 5, 19 (1953) ("The complex and difficult task of distributing a rate increase among the ratepayers so as to eliminate discriminations and unfairness has been entrusted to the commission."). That responsibility is discharged in the ratemaking process. <u>See</u> <u>Company v. State</u>, 95 N.H. 353, 364 (1949) ("[A]n important step in rate making is 'the adjustment of a rate schedule conforming to [the general revenue] level so as to eliminate discriminations and unfairness from its details.'" (quoting <u>Power Comm'n v. Pipeline Co.</u>, 315 U.S. 575, 584 (1942))); <u>see also</u> <u>Granite State Alarm</u>, 111 N.H. at 237; <u>Chicopee Mfg. Co.</u>, 98 N.H. at 19. By negative implication, and in accordance with statutory provisions prohibiting utilities from imposing charges that deviate from the tariffed rates, <u>see</u> RSA 378:14, Lakes Region is not empowered to adjust its charges outside its tariffed rates unilaterally in order to ensure that Mykytiuk pays his fair share of Lakes Region's capacity costs.

Lakes Region, nevertheless, argues that its tariff "<u>assumes</u> and the Commission's rules <u>require</u> that separate and distinct uses or buildings have separate service lines (and meters) 'except in unusual situations such as

service to an apartment or to a condominium.'" (Quoting <u>N.H. Admin. R.</u>, Puc 606.04(g)). The rule Lakes Region quotes, however, does not explicitly require separate service lines for separate and distinct uses or structures, but, rather, provides that "[c]urb stops shall be placed at the customer's property line except in unusual situations such as service to an apartment or to a condominium." <u>N.H. Admin. R.</u>, Puc 606.04(g); <u>see</u> <u>N.H. Admin. R.</u>, Env-Dw 504.02(c) (defining "[c]urb stop" to mean "the valve between the water distribution system and the service customer's premises which controls the flow of water to the premises").

Indeed, Rule 606.04(g)'s reference to "the <u>customer's</u> property line" highlights the problem Naylor noted at the hearing. <u>N.H. Admin. R.</u>, Puc 606.04(g) (emphasis added). As the Commission summarized his testimony, Naylor "agreed with the suggestion that 'customer' and 'dwelling unit' should be treated synonymously." Lakes Region's tariff, however, does not define the term "customer" despite describing its base charge as a "[m]inimum charge per customer per quarter." The Commission's regulations define "[c]ustomer" to mean "<u>any person</u>, firm, corporation, cooperative marketing association, utility or governmental unit or subdivision of a municipality or of the state or nation supplied with water service by a utility." <u>N.H. Admin R.</u>, Puc 602.05 (emphasis added); <u>see also</u> <u>N.H. Admin R.</u>, Puc 602.18 (defining "[w]ater service" to "mean[] the furnishing of water to a customer in this state by a utility").

The Commission argues that "[t]he 'customer' in this case is Mr. Mykytiuk, not the physical structures on his property. Connecting his bunkhouse to the water line in his home, after the meter, did not service a second customer." We agree. Because Mykytiuk is only one person, Lakes Region's tariff, as now written, subjects him to only one base charge. Accordingly, the Commission's order properly noted that Lakes Region's remedy would lie in a tariff amendment. The Commission recounted Naylor's testimony on this point: "To rectify the situation, Mr. Naylor suggested that what is needed is a clear definition of what a customer is and what a place of consumption is, and a clear definition of how service is formally requested. He thinks a tariff change is in order to make it clearer." (Citation omitted.)

Lakes Region further contends that the Commission erred in determining that Mykytiuk's "burden of proof was only to prove that Lakes Region's decision to impose a second customer charge on him is not authorized under its current tariff." (Quotation omitted.) Lakes Region argues that Mykytiuk's "burden of proof was to demonstrate that the rate charged by Lakes Region was unjust [or] unreasonable or in violation of the law." (Quotation omitted.) It then asserts that "[t]he Commission did not find that Lakes Region's charges were unjust or unreasonable or that Lakes Region had violated any law." We disagree.

6

In denying Lakes Region's motion for rehearing, the Commission ruled that "[b]ecause a second base charge is not in Lakes Region's tariff, the imposition of one on Mr. Mykytiuk is 'in violation of [a] provision of law' under RSA 378:7." (Quoting RSA 378:7.) Our law on this issue is well settled:

> [T]he vehicles by which utility rates are set, the tariffs or rate schedules required to be filed with the [Commission], do not simply define the terms of the contractual relationship between a utility and its customers. They have the force and effect of law and bind both the utility and its customers. As such, the customers of a utility have a right to rely on the rates which are in effect at the time that they consume the services provided by the utility, at least until such time as the utility applies for a change.

Appeal of Pennichuck Water Works, 120 N.H. 562, 566 (1980) (citations omitted). Accordingly, the Commission properly ruled that Lakes Region's deviation from its tariffed rate was a violation of law and that Mykytiuk had met his burden.

Lakes Region next argues that the Commission erred "in denying Lakes Region's motion for rehearing because it failed to explain how its rules applied or did not apply under RSA 378:1." In essence, Lakes Region asserts that the Commission failed to address its argument that its "approved rates for water service under RSA 378:1 do not allow it to provide service to multiple dwellings" except in "unusual" cases such as apartments or condominiums "where it is understood, if not stated, that separate charges apply for each use." (Quotation omitted.) Relying upon Appeal of City of Nashua, 138 N.H. 261, 263-64 (1994), Lakes Region argues:

> New Hampshire law is clear that when the Commission structures its decision solely by summarizing evidence presented by the contending parties and describing the parties' opposing views, without making specific factual findings in support of its own conclusions, it fails to meet its statutory obligation to make a concise and explicit statement of the underlying facts supporting its findings and its order will therefore be vacated and remanded for a new hearing.

(Quotations, brackets, and ellipses omitted.)

We disagree that the Commission's decision is contrary to the above-stated proposition of law. The Commission's essential finding of fact — not disputed by Lakes Region — was that "Lakes Region's tariff does not specifically address the situation presented here . . . . The tariff refers to 'customer(s)' throughout, but there is nothing in the tariff about when a second meter or separate service must be installed, or what is or is not a tandem

7

service as prohibited by our rules under [Rule] 606.04(j)." This finding was, as we concluded above, sufficient to support the Commission's legal ruling that, "[u]nder the terms of its present tariff, there is no basis for Lakes Region to require Mr. Mykytiuk to pay a second base charge every month for his newly constructed unit." Lakes Region cites no authority for the proposition that an order of the Commission providing both factual findings and legal reasoning sufficient to support its rulings must, nevertheless, be vacated because it fails to explain why the Commission found the non-prevailing party's contrary arguments unpersuasive.

Finally, Lakes Region argues that the Commission erred by failing to reconsider a new issue decided in its order. Specifically, Lakes Region argues that "[i]n the last sentence of [its order], the Commission determined a new issue that was not previously noticed for the hearing when it ordered that: 'In the event its tariff is revised, [Lakes Region] shall not require Mr. Mykytiuk to install a second meter in the future so long as he undertakes no further renovations to the structures on his property.'" Lakes Region argues that "[b]ecause the Commission did not provide notice of this issue, Lakes Region did not present evidence or arguments as to significant operational problems that would arise if the Commission did not apply Rule . . . 606.04," including risk of water loss and property damage due to leaks when one or both structures are unoccupied and the inability to disconnect service from one building without also disconnecting the other.

We disagree that Lakes Region lacked notice of the issue. By letter dated November 10, 2016, the Commission notified the parties that because its rules "do not specifically address separate dwelling units and separate structures under [Rule] 600 et seq.[,] . . . [t]he Commission believes that a hearing on this matter will be useful in determining whether a separate base charge should be implemented and/or a separate meter installed." In its order on Lakes Region's motion to deny complaint and exclude evidence, the Commission noted that "[t]he thrust of Mr. Mykytiuk's complaint is that Lakes Region is not permitted to charge him a separate base charge and/or install a separate meter under the terms of [Lakes Region's] tariff." We conclude that Lakes Region had adequate notice that the issue of whether it could or could not require Mykytiuk to install a separate service to his bunkhouse was an issue to be decided in the proceeding. We also note that notwithstanding Lakes Region's contention that the alleged lack of notice precluded it from presenting evidence or arguments as to certain "operational problems," those problems were discussed in testimony by its utility manager and Naylor, and were also discussed in the summation by its counsel.

To the extent the parties' arguments address whether the service to Mykytiuk's bunkhouse is or is not a tandem connection, we decline to consider them. As previously noted, the Commission made no finding on that issue and it was not specifically asked to do so in Lakes Region's motion for rehearing.

Accordingly, we also decline Lakes Region's request that we "vacate and remand . . . with instructions to interpret and apply the Commission's water service rules to the facts of this case" as that request is not properly before us. See RSA 541:4 (2007) (providing that "no ground not set forth [in a motion for rehearing] shall be urged, relied on, or given any consideration by the court").

Affirmed.

LYNN, C.J., and BASSETT, J., concurred.